WOODROW W. WESTMORELAND *v.* GENERAL ACCIDENT FIRE AND LIFE ASSURANCE CORPORATION, LTD.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued January 3—decided February 19, 1957

*Valentino D. Clementino,* for the appellant (defendant).

*John W. Joy,* with whom, on the brief, was *Abraham A. M. Schweitzer,* for the appellee (plaintiff).

INGLIS, C. J. In this action the plaintiff seeks to recover from the defendant as his insurer under a policy covering damage to his automobile by collision. The question involved is whether the defendant had effectively canceled the policy prior to the date of the collision in which the plaintiff's car was damaged.

The finding made by the trial court is not attacked except as to the conclusions set forth therein. The subordinate facts as found, so far as they are material to the issues on this appeal, are the following: On April 13, 1954, the defendant issued to the plaintiff a policy insuring him against loss by reason of damage to his automobile by collision. The East Hartford Aircraft Federal Credit Union held a chattel mortgage on the car, and the policy was made payable to it also as its interest might appear. The plaintiff's address as set forth in the policy was $14\frac{1}{2}$ Hackmatack Street, Manchester, Connecticut. The policy contained a provision for cancellation by either party.[1] The plaintiff was employed at Pratt

---

[1] "Cancellation. This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing. If the named insured cancels, earned premiums shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premiums shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. The company's check or the check of its representative mailed or delivered as aforesaid shall be sufficient tender of any refund of premium due to the named insured."

and Whitney Aircraft. A fellow employee was William DeHan, who conducted a part-time insurance brokerage business. DeHan, acting as the plaintiff's agent, obtained the policy from Charles W. Lathrop, the authorized agent of the defendant. DeHan maintained an open running account with Lathrop for premiums. On June 28, 1954, DeHan paid Lathrop the amount charged as premium on the plaintiff's policy. In October, because the plaintiff had not paid DeHan the premium on the policy, DeHan requested Lathrop to procure a cancellation. As a result, on October 11, 1954, the Springfield office of the defendant mailed by registered mail, return receipt requested, an envelope containing a notice that the policy would be canceled on October 20. This notice was addressed to the plaintiff at the address given in the policy. Before that time, however, the plaintiff had moved from Manchester to Canton. He did not receive the notice of cancellation. The envelope was subsequently returned to the defendant's Springfield office marked "Moved, Left no address." The defendant mailed a copy of the notice to the credit union. An officer of the credit union, over the telephone, told the plaintiff that the policy was to be canceled but did not give him the effective date of the cancellation. The plaintiff replied that he would get another agent.

On December 30, 1954, the plaintiff's automobile was in a collision and was damaged to the extent of $900. On January 3, 1955, DeHan, not having been apprised that the notice of cancellation of the policy had actually been sent, billed the plaintiff for the full amount of the premium, threatening court action if the bill was not paid promptly. At about the same time, the plaintiff reported the accident to DeHan. DeHan then told the plaintiff that he had

requested the cancellation of the policy but had had no notice of it, and he aided the plaintiff in making out a proof of loss. In the early part of January, the plaintiff paid DeHan the amount of the premium. On February 15, 1955, after DeHan's account with Lathrop had been credited in January with the un-earned portion of the premium, DeHan tendered his check for that amount to the plaintiff, but the tender was refused.

The court arrived at the following conclusions: The payment of the premium by DeHan to the defendant in June, 1954, operated as payment between the plaintiff and the defendant. Since, however, De-Han was the agent of the plaintiff only for the purpose of procuring the policy, he had no authority on behalf of the plaintiff to order a cancellation of the policy. A credit by Lathrop to DeHan of the amount of the unearned premium was not the tender of the unearned premium to the plaintiff, and the lapse of time between the date of cancellation, October 20, 1954, and the date of the tender by DeHan to the plaintiff, February 15, 1955, was longer than "as soon as practicable after cancellation becomes effective." It was incumbent on the defendant upon the return to it of the notice of cancellation to make other reasonable efforts to notify the plaintiff. The collision policy was still in force at the time of the loss.

On the strength of these conclusions the trial court rendered judgment in favor of the plaintiff, and the defendant has appealed. The appeal presents two questions. The first is whether the method of giving notice of cancellation adopted by the defendant satisfied the requirements of the policy. The second is whether the policy required the payment to the plaintiff of the unearned premium as a condition of the effectiveness of the cancellation.

As to the first question, the trial court apparently rested its decision on the ground that the policy required the defendant to use reasonable diligence to get actual notice of cancellation to the plaintiff. Manifestly, this is an incorrect interpretation of the terms of the policy. Those terms are: "This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice . . . ." It is always competent for parties to contract as to how notice shall be given, unless their contract is in conflict with law or public policy. When they do so contract, the giving of a notice by the method contracted for is sufficient whether it results in actual notice or not. *Superior Ins. Co.* v. *Restituto,* 124 F. Sup. 392, 395; *Bradley* v. *Associates Discount Corporation,* 58 So. 2d 857, 858 (Fla.); *Sorensen* v. *Farmers Mutual Hail Ins. Assn.,* 226 Iowa 1316, 1321, 286 N.W. 494; *Boyle* v. *Inter Ins. Exchange,* 335 Ill. App. 386, 389, 82 N.E.2d 179; *Trinity Universal Ins. Co.* v. *Willrich,* 13 Wash. 2d 263, 273, 124 P.2d 950. In the case at bar the provisions of the policy were complied with by mailing the notice.

In brief and argument on appeal, the plaintiff claims one other irregularity in the giving of the notice of cancellation. That is that the notice was sent by registered mail, return receipt requested. It is true that some cases have held that notice by registered mail with the personal receipt of the addressee required is not such notice as complies with a policy provision for notice by mail. *Werner* v. *Commonwealth Casualty Co.,* 109 N.J.L. 119, 121, 160 A. 547; *Kamille* v. *Home Fire & Marine Ins. Co.,*

129 Misc. 536, 538, 221 N.Y.S. 38. Those cases might be distinguished from the present case in that the notice in them was directed to be delivered to the addressee only. That aside, however, we do not agree with the reasoning of those cases. When the provision in a policy is that notice by mail is sufficient, that provision is broad enough to cover all the kinds of mail which are commonly used to convey messages. Registered mail is just as much mail as ordinary mail. The sending of a notice of cancellation by registered mail is compliance with the requirement of the policy that the notice shall be mailed.

We turn now to a consideration of the question whether the cancellation of the policy can be effective without the payment to the insured of the unearned premium. On this question the authorities in other jurisdictions seem to be in disagreement. The divergence of views, however, can in large measure be accounted for on the ground that the policy provisions involved in the various cases differ radically. The better authority is that when the provisions of the policy are like those of the policy now before us, the effectiveness of the cancellation does not depend upon the refund of the unearned premium. The sole effect of the provision requiring the return of a portion of the premium is to create an indebtedness of the insurer to the insured. *Scapes* v. *Orr,* 2 Ill. App. 2d 363, 367, 119 N.E.2d 479; *American Fire & Casualty Co.* v. *Combs,* 273 S.W.2d 37, 38 (Ky.); *Woodard* v. *Calvert Fire Ins. Co.,* 239 S.W.2d 267, 269 (Ky.); *Medford* v. *Pacific National Fire Ins. Co.,* 189 Ore. 617, 637, 219 P.2d 142; *Wallace* v. *State Farm Mutual Automobile Ins. Co.,* 187 Tenn. 692, 697, 216 S.W.2d 697; *Insurance Co. of Texas* v. *Parmelee,* 274 S.W.2d 944, 946 (Tex.); *Putnam* v. *Deinhamer,*

270 Wis. 157, 162, 70 N.W.2d 652; 45 C.J.S. 98.

With specific reference to the cancellation clause in the policy before us, it is to be noted that after providing that the policy may be canceled by either the insured or the company and that if the company cancels, earned premiums shall be computed pro rata, the clause then stipulates: "Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective." Obviously, the purpose of these provisions is to leave no uncertainty that it is the obligation of the company, if it cancels the policy, to return the unearned premium, computed pro rata. But the significant phrase is that the obligation of the company is to adjust the premium as soon as practicable "after cancellation becomes effective." If the obligation of the company is to adjust the premium only after the cancellation becomes effective, it can hardly be maintained that it was the intent of the parties that the adjustment must be made before the cancellation is effective. Clearly, therefore, the policy does not contemplate that the adjustment of the premium is a condition precedent to cancellation. If such adjustment is not a condition precedent, it certainly is not a condition subsequent in the sense that failure to adjust as soon as practicable after cancellation has become effective will reinstate the policy. It is inconceivable that the parties intended that after the policy had been canceled it would be revived at some later time. If such were the case, the parties would never know at just what time after the policy had ceased to be binding it would again spring into effect. The insured would never know whether the policy had been finally canceled or whether it would be revived at some future time. He would not know

whether he ought, in the meantime, to arrange for other insurance. See *Putnam* v. *Deinhamer*, supra; *Carroll* v. *Garlington-Hardwick Co.*, 79 Ga. App. 708, 54 S.E.2d 441.

The plaintiff relies on *Bessette* v. *Fidelity & Casualty Co.*, 111 Conn. 549, 150 A. 706. In that case we held (p. 555) that the adjustment of a premium was a condition precedent to the cancellation of the policy. That case, however, is clearly distinguishable from the present one on the ground that the cancellation clause in the policy there involved was radically different from the one here. In the *Bessette* case, the policy did not contain the significant provision that the adjustment should be made after the cancellation became effective.

We therefore conclude that under the policy here in suit the adjustment of the premium by the company is not a condition to the effectiveness of the cancellation. The effect of the cancellation clause in the policy is that when the policy is canceled by the company, the unearned portion of the premium paid, computed pro rata, becomes a debt due from the company to the insured. This indebtedness may be enforced by suit at any time after the cancellation has become effective and the time within which it is practicable for the company to make the adjustment has elapsed, unless, before then, the company tenders its check for the amount of the indebtedness. The cancellation of the policy is effective on the date specified in the notice irrespective of the obligation on the part of the company to adjust the premium. It follows that in the present case, on the facts found by the trial court, the policy was not in force at the time when the plaintiff's car was damaged, and the conclusion of the trial court to the contrary was erroneous.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion BALDWIN and O'SULLIVAN, Js., concurred.

DALY, J. (dissenting). I do not agree with the conclusions that cancellation of the policy by the company can be effective without payment to the insured of the unearned premium, that the sole effect of the provision requiring the return of the unearned premium is to create an indebtedness of the company to the insured, and that the premium adjustment—payment to the insured of the unearned premium—is not a condition. In my opinion, the use of the words "may" and "shall" in the provision of the cancellation clause that premium adjustment "may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective" is significant. The word "may" connotes the insurer's privilege, while the word "shall" manifests its self-imposed obligation. "When the words in an insurance policy are, without violence, susceptible of two interpretations, that which will sustain the claim of the insured and cover the loss must be adopted. In the light of this settled rule of construction, we must adopt, between two reasonably tenable constructions, that which is most favorable to the plaintiff, the insured. 'In the presence of a reasonable doubt we must resolve it in favor of the insured. Between two interpretations, we are required by the rules of legal construction to adopt that which will sustain his claim.' *Dickinson* v. *Maryland Casualty Co.*, 101 Conn. 369, 379, 125 A. 866 . . . . The rule rests upon the ground that the company's attorneys, officers or

agents prepared the policy, and it is its language that must be interpreted. . . . It lay in the power of the defendant to formulate the terms of the provision so as to remove any doubt as to its meaning and intent." *Scranton* v. *Hartford Fire Ins. Co.,* 141 Conn. 313, 315, 105 A.2d 780.

The plaintiff contends that the obligation to pay or tender to him the unearned premium as soon as practicable after cancellation was a condition and that because the defendant failed to fulfil its obligation the cancellation was not effective. I believe that this contention is valid and in harmony with our established rule of construction and that the trial court did not err in concluding that the policy was in effect at the time when the plaintiff's car was damaged.

In this opinion WYNNE, J., concurred.