The plaintiff owns commercial premises at 51 Danbury Road, Wilton. She leased the premises in February, 1969, to Matthew Piazza for use as a clothing store. As part of the leasing agreement, Piazza was required to secure fire insurance coverage on the structure, naming the plaintiff as a coinsured as her interest might appear.
Piazza did procure the issuance of a policy by the defendant Nationwide, for a three-year term, from March 6, 1969 to March 6, 1972, in the sum of $20,000. The policy named Piazza, his associate, William Pinciaro, and the plaintiff as coassureds as their interest might appear. The address of record in the policy for all three individuals was 51 Danbury Road, Wilton. The plaintiff's residence is in Westport.
On or about July 21, 1970, a fire damaged a substantial part of the plaintiff's building in Wilton. The appraised value of the loss was $12,637, based *Page 293 
on an estimate by the plaintiff's expert. When the plaintiff attempted to secure payment of the loss from Nationwide, she was advised that the policy had been canceled as of September 2, 1969, owing to nonpayment of premium. The cancellation notice was in the form of a letter, emanating from the Hamden office of Nationwide, dated August 19, 1969, effective September 2, 1969, and mailed to Piazza, Pinciaro and the plaintiff at the Wilton address.
The policy had been procured through the defendant Paul A. Sharron, of Norwalk, an agent for Nationwide.
The plaintiff commenced the instant action, for reimbursement of the loss, against both Sharron and Nationwide.
 I
The writ originally contained four counts. At the time of trial, the fourth count was withdrawn by the plaintiff and the case went to the jury solely on three counts. The first and third counts asserted liability against Nationwide, while the second count sought recovery against Sharron.
The sole special defense filed by the defendants was that the policy had been canceled, owing to the claimed nonpayment of premium, by the letter of August 19, 1969, and therefore the defendants were not liable for the loss in July, 1970.
The plaintiff denied actual receipt of the notice of cancellation. She stressed the fact that the notice was addressed to the store premises, and not to her residence. She further alleged that on or about August 20, 1969, her regular insurance agent, John Kallaugher, had notified Sharron to endorse the policy so that it would not be canceled without five days' prior written notice to the plaintiff. At trial, Sharron denied receiving this letter. *Page 294 
At the conclusion of the evidence, the defendants made a motion for a directed verdict. Decision was reserved thereon, pursuant to § 255 of the Practice Book.
The jury returned a verdict against both defendants for $13,965. The defendants thereafter filed a motion for judgment, under § 255 of the Practice Book, and the standard motion to set aside the verdict because it was contrary to law and against the evidence. Both motions, however, as the defendants' counsel stated in oral argument, are limited to two basic objections to the charge, to be discussed hereinbelow.
 II
The defendants initially protested the portion of the court's charge which stated that to prove their special defense, under the policy terms, they must establish that the plaintiff actually received the cancellation notice of August 19, 1969.
Section 38-98 of the General Statutes makes it mandatory that a fire insurance policy contain a provision giving the insurer a right to cancel the policy by "giving" the insured a five-day written notice of cancellation. The statute does not contain any express provision as to the address to which the notice shall be sent. It is even silent as to the precise mode of "giving" the notice — whether by mail, in person, or otherwise.
The actual text of the DiProspero policy closely follows § 38-98 by providing for cancellation at any time by Nationwide by "giving" a five-day written notice to the insureds.
Where the statute, or policy provision, requires the "giving" of notice to the insured, without stipulating any form or way in which the notice must be given, actual receipt by the insured of such notice is generally recognized as a condition precedent to *Page 295 
valid cancellation of the policy. Therefore, a cancellation notice contained in a letter mailed by the insurer but not received by the insured is ineffective as a valid cancellation. Powell v. Lititz Mutual Ins.Co., 419 F.2d 62; 43 Am. Jur.2d 455, Insurance, § 408 (stating that this rule is "universally recognized"); note, 64 A.L.R.2d 982, 994; 6A Appleman, Insurance Law and Practice § 4186, p. 554.
In Powell v. Lititz Mutual Ins. Co., supra, 66, the court said: "By the terms of the policy more than mere mailing was required. The insurer had togive the insured written notice. We hold that because of these policy terms if the notice was not received by the insured the policy was not cancelled."
In Boyce v. National Commercial Bank trustCo., 41 Misc.2d 1071, aff'd, 22 App. Div. 2d 848
(N.Y.), involving an action in New York against the defendant Nationwide, likewise on a fire insurance policy, Nationwide claimed that a notice of cancellation had been mailed to the plaintiffs owing to nonpayment of premium. The plaintiffs denied receipt of the notice. The policy provisions and the New York statute pertaining to cancellation notices (N Y Ins. Law § 168) were either identical or substantially similar to the corresponding provisions in the instant case. In ruling for the plaintiffs, the court stated (p. 1074): "In the cases dealing with interpretation of a provision that requires that a notice should be `given', it has been held that the requirement is not fulfilled until the party entitled to noticehas received the required notice." (Italics supplied.) In accord was Fifty States Management Corporation
v. Public Service Mutual Ins. Co., 67 Misc.2d 778,785, citing Boyce.
The statutory mandate as to notice must be strictly followed. 45 C.J.S. 83, Insurance, § 449. *Page 296 
There was ample evidence from which the jury could conclude that Nationwide's cancellation letter dated August 19, 1969, was never, in fact, actually received by the plaintiff. Accordingly, the jury could reasonably find that the defendants had not sustained their burden of proof on this issue. Clary
v. Empire Mutual Ins. Co., 30 Conn. Sup. 113.
Research did not reveal any Connecticut authorities directly in point. The court believes, however, that the text and case citations referred to hereinabove contain a well-reasoned analysis of the prevailing law, which should be applied herein. The defendants' counsel did not furnish the court with any authorities to the contrary, in any jurisdiction whatsoever.
Westmoreland v. General Accident Fire LifeAssurance Corporation, 144 Conn. 265, is clearly distinguishable. The policy provision in that case expressly referred to cancellation by mail. It stated that the cancellation could be effected by "mailing" a notice to the "insured at the address shown in this policy." This is not the situation in the instant case.
 III
The defendants' second and final attack on the charge relates to the portion thereof dealing with the invalidity of the cancellation notice because of its failure to comply fully with § 38-98 of the General Statutes. Section 38-98, containing mandatory requirements for fire insurance policies in Connecticut, states as follows, with respect to cancellation: "Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand."
Section 38-99 (a) of the General Statutes provides that no fire insurance policy shall be issued in this *Page 297 
state unless it conforms as to all provisions, stipulations, agreements and conditions with the form of policy contained in § 38-98.
The policy in the instant case includes the cancellation provisions set forth in § 38-98. However, Nationwide's cancellation notice, as embodied in the letter dated August 19, 1969, did not contain the provision relative to refund of the excess premium.
Strict compliance by an insurer with the policy provisions for notice is essential to effect a cancellation through such notice. Ambiguities in the notice will be resolved in favor of the insured. 43 Am. Jur.2d 450, Insurance, § 405.
The policy provisions prescribing the contents of the notice constituted a contract between the plaintiff and Nationwide which the plaintiff was entitled to enforce. Westmoreland v. General Accident Fire Life Assurance Corporation, supra, 270. It is axiomatic that the notice of cancellation should be definite and certain, and comply in all respects with the pertinent statute and policy provisions. Bessette
v. Fidelity Casualty Co., 111 Conn. 549, 556.
The contents of a cancellation notice must contain all the information required by the applicable statute — in this instance, § 38-98. Fifty States ManagementCorporation v. Public Service Mutual Ins. Co.,
supra, 782. The failure of Nationwide to comply strictly and literally with the statute, and relevant policy provisions, as to the notice of cancellation rendered the attempted cancellation nugatory. GovernmentEmployees Ins. Co. v. Mizell, 36 App. Div. 2
d 452, 453 (N.Y.).
The inclusion of the clause relative to refund of excess premiums was a condition precedent if the cancellation notice was to become valid and binding. For lack of this provision, Nationwide could not, *Page 298 
and did not, effect a valid cancellation. Naify v.Pacific Indemnity Co., 11 Cal.2d 5, 10; Pellets, Inc.
v. Millers Mutual Fire Ins. Co., 241 So.2d 550, 553
(La.App.); Molyneaux v. Royal Exchange Assuranceof London, 235 Mich. 678, 680; 45 C.J.S. 98, Insurance, § 451.
In Allied Concord Financial Corporation v. SterlingIns. Co., 251 S.C. 38, 41, the court said that the omission of a statement that the unearned premium will be refunded on demand is a fatal defect in a notice, where the policy provides that a notice of cancellation shall contain such a statement. To the same effect, see Artificial Ice Co. v. ReciprocalExchange, 192 Iowa 1133; 6A Appleman, Insurance Law and Practice § 4185, p. 548.
The court charged the jury that if, on their examination of the policy provisions (mandating a statement in the notice as to refund of excess premiums) and the notice itself, they determined that a refund statement was missing from Nationwide's letter, then they could conclude that the attempted cancellation notice was null and void. Accordingly, the jury could find that the special defense had not been proved by the defendants.
The authorities examined by the court, as to the contents of the cancellation notice and the result of the instant omission, stated a logical and prevailing rule. No citations to the contrary were submitted by the defendants either in their requests to charge or in argument on their motions.
 IV
As noted, the jury returned a verdict against the defendants for $13,965. The court charged the jury that interest was recoverable, over and above the appraised loss. Campbell v. Rockefeller, 134 Conn. 585, *Page 299 
591; Hawkins v. Garford Trucking Co., 96 Conn. 337,341. The defendants did not challenge the verdict on the ground that it was excessive.
 It is concluded that the charge, considered as a whole, fairly presented the case to the jury, so that no injustice would result.