KEVIN STRATTON *v.* ABINGTON MUTUAL FIRE INSURANCE COMPANY ET AL.
(4264)

BORDEN, DALY and BIELUCH, Js.

Argued October 17, 1986—decision released February 3, 1987

*William J. Massie, Jr.,* for the appellant (plaintiff).

*Robert G. Oliver,* for the appellee (named defendant).

BIELUCH, J. This is an action to collect damages under a homeowner's insurance policy. The plaintiff has appealed from the judgment rendered for the named defendant,[1] in accordance with the report of the attorney trial referee. On appeal, the plaintiff claims that the trial court erred in sustaining the referee's finding that the defendant had established its special defense that the insurance policy had been effectively cancelled by the defendant prior to the plaintiff's loss.

The plaintiff asserts that the notice of cancellation clause in the insurance policy was ambiguous and, therefore, should have been construed to sustain the plaintiff's claim. He argues that the mailing of the notice of cancellation by certified mail was not provided for in the policy. Furthermore, he alleges that the policy contained no provision describing where the notice of policy cancellation was to be mailed. He claims that the insurer was under a further obligation to notify the plaintiff of cancellation when the original notice by certified mail was returned undelivered. Finally, he alleges

---

[1] The plaintiff brought this action against the named defendant insurance company and its insurance agents. The revised complaint was brought against the named defendant only. As used in this opinion, therefore, the term defendant refers to the named defendant only.

that the evidence was insufficient to sustain the referee's finding that the post office had left two "pink slips" in the plaintiff's mailbox notifying him of where and when he could personally be given the certified letter at a postal window.

The referee's finding of facts are as follows: On April 16, 1979, the plaintiff purchased a three year homeowner's policy of insurance from the defendant. The policy premiums were payable at inception and at each subsequent anniversary date. The policy contained the following cancellation clause: "3. CANCELLATION OF POLICIES WITH A TERM OF MORE THAN ONE YEAR. . . . [T]his Company may cancel any policy with a term of more than one year by mailing or delivering to the Insured, not less than 30 days prior to any anniversary date of this policy, written notice stating that cancellation shall be effective on the anniversary date of this policy. The mailing of notice as aforesaid shall be sufficient proof of notice."

On February 19, 1980, not less than thirty days prior to the first anniversary date of the policy, the defendant mailed to the plaintiff by certified letter written notice of cancellation of the policy, effective on April 16, 1980. The referee concluded that this notice of cancellation of policy conformed to the requirements of the statutes and of the insurance commissioner, as well as to the terms of the policy. No bill for the second yearly premium was issued by the defendant, and no payment for the next year's renewal was made by the plaintiff.

On July 26, 1980, the plaintiff incurred a loss by theft at his insured premises, 182 Leetes Island Road, Guilford. The plaintiff filed a claim for the loss through his insurance agent. He was subsequently notified that his insurance coverage was not in effect at the time of loss, having been cancelled as of April 16, 1980. The defendant, therefore, denied payment for the loss.

The referee acknowledged that the threshold issue was "whether the policy was in effect on the date of the loss or had been cancelled on April 16, 1980 by virtue of the notice of cancellation as alleged by Defendant." The referee found that the plaintiff did not receive notice of the cancellation which had been properly addressed and mailed to the plaintiff at his residence by certified mail. The plaintiff's mail was regularly delivered by a rural mail carrier to his roadside mailbox, where it was routinely picked up. Because the notice of cancellation was sent by certified mail, the carrier was required to deliver the letter to the plaintiff at his residence with proof of delivery. When his first attempt at delivery on February 25, 1980, was unsuccessful, he left a "pink slip" in the roadside mailbox advising the plaintiff of the certified mail awaiting him at the Guilford post office. When the notice of cancellation was still unclaimed on March 1, 1980, the mail carrier made a second attempt to deliver the letter to the plaintiff at his residence. Again nobody was home, and a second "pink slip" was left in the plaintiff's mailbox. On March 11, 1980, the certified letter was mailed back to the defendant by the Guilford post office as "unclaimed." It was thereafter returned to the defendant on March 17, 1980.

The referee found that during "all times [relevant], the Plaintiff resided at 182 Leetes Island Road, Guilford and was not absent therefrom during vacation or other prolonged periods." He also found that during the months of February and March of 1980, the mail left in the plaintiff's roadside mailbox was being removed. He concluded that the plaintiff's loss on July 26, 1980, was not insured under the defendant's policy of insurance as of April 16, 1980, the policy having been terminated by the defendant's notice of cancellation dated February 19, 1980. The court subsequently rendered judgment in favor of the defendant in accordance with the referee's report.

The plaintiff claims that the term "mailing" and the phrase "mailing . . . to the Insured . . . written notice" in the cancellation provision of the insurance policy are ambiguous and should, therefore, be construed in the plaintiff's favor.

"Strict compliance by an insurer with the statutory mandates and policy provisions as to notice is essential to effect a cancellation through such notice. . . . Any ambiguities in the notice will be construed in favor of the insured." (Citations omitted.) *Travelers Ins. Co.* v. *Hendrickson,* 1 Conn. App. 409, 412, 472 A.2d 356 (1984). In the present case, the term "mailing" is not ambiguous. Saying so does not make it so. "When the provision in a policy is that notice by mail is sufficient, that provision is broad enough to cover all the kinds of mail which are commonly used to convey messages." *Westmoreland* v. *General Accident F. & L. Assurance Corporation,* 144 Conn. 265, 271, 129 A.2d 623 (1957) ("[t]he sending of a notice of cancellation by registered mail is compliance with the requirement of the policy that the notice shall be mailed"). Mailing in a special form that furnishes proof of delivery is just as much "mailing" as ordinary mail, with the additional service of a record obtained and retained by the postal authorities of its receipt by the addressee.

The term "mailing" used in the insurance policy, while inclusive of various types of mailing, is not ambiguous. It consists of the delivery of correspondence through the agency of the postal authorities in one of many forms of delivery available to the sender at an appropriate rate of postage.

The plaintiff also alleges that the phrase "mailing . . . to the Insured . . . written notice" is ambiguous because it fails to designate a place where such notice should be sent. The ordinary meaning of this phrase indicates that the notice was to be sent to the

address of the insured furnished by him and contained in the policy. The declarations of the policy for the "Named Insured and P.O. Address" are "Kevin Stratton, 182 Leetes Island Road, Guilford, Conn. 06437." This address also describes the "residence premises covered [by the policy]." The plaintiff does not identify any other address where he maintains that notice of the cancellation should have been sent. There is no claim that the plaintiff interpreted this clause in a manner contrary to the attorney referee's finding that "[t]he notice of cancellation was properly addressed and mailed to Plaintiff by certified mail to Plaintiff's residence at 182 Leetes Island Road, Guilford, Connecticut." The term "mailing" and the phrase "mailing . . . to the Insured . . . written notice" are not ambiguous.

The plaintiff alleges that the cancellation of the policy was void because of the defendant's failure to make further efforts to notify the plaintiff of the cancellation upon the return to it of the "unclaimed" letter.

"It is always competent for parties to contract as to how notice shall be given, unless their contract is in conflict with law or public policy. When they do so contract, the giving of a notice by the method contracted for is sufficient whether it results in actual notice or not." *Westmoreland* v. *General Accident F. & L. Assurance Corporation,* supra, 270.

The plaintiff cites no Connecticut judicial or statutory authority which recognizes an insurer's duty to make further efforts to serve notice of cancellation beyond those expressed in the insurance contract. The two cases of other jurisdictions cited by the plaintiff are inapposite. See *Long* v. *Home Indemnity Co. of New York,* 169 So. 154, 157–58 (La. App. 1936); *Griffin* v. *General Accident F. & L. Assurance Corporation,* 94 Ohio App. 403, 410, 116 N.E.2d 41 (1953).

We find under the facts of this case that the insurer complied with the contractual provisions for cancelling the policy and had no further duty to notify the plaintiff of its action. More appropriately, the plaintiff had the correlative obligation to call for the certified letter of cancellation upon being notified by the postman of its existence. One cannot refuse the acceptance of notice and then claim that it was not given to him. The addressee's inconvenience in calling for the higher forms of mailing, such as registered or certified mail, is overridden by the importance or value usually attendant to such mailings.

The plaintiff's final claim is that the referee erred in finding that the defendant met its burden of proof that the post office left two "pink slips" in the plaintiff's mailbox notifying him to call for a certified letter unable to be delivered in hand. He states that the evidence was insufficient to prove that the notice was left in conformity with the normal practice for certified mail. He claims, therefore, that he had no "de facto or constructive notice of the certified letter or knowledge of the cancellation of his insurance prior to [the loss]."

We find that there was sufficient evidence in the record to support the referee's finding that the "pink slips" had been left in the plaintiff's mailbox on February 25 and March 1, 1980.

The postman testified that on the basis of the established procedure of the Guilford post office and his notations as they appeared on the face of the envelope, he made two unsuccessful attempts to deliver the notice of cancellation before returning it to the defendant. Upon an unsuccessful attempt to deliver certified mail, the procedure requires that a pink claim slip be put in the mailbox notifying the addressee that his certified

mail has been returned to the local post office where it can be called for. The mail carrier admitted that he did not remember the particular certified letter in question, but he identified the notation "N/L" as his writing to record that a notice had been left for the addressee. This inability of the postman to remember the letter in question is without significance, but of importance is his official notation of attempted delivery of it. A postman is a public officer who is presumed to perform his duties properly unless the contrary appears. 31A C.J.S., Evidence § 136; see *Cahill* v. *Board of Education,* 198 Conn. 229, 242, 502 A.2d 410 (1985); *Rompe* v. *King,* 185 Conn. 426, 431, 441 A.2d 114 (1981); see also *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Cole,* 189 Conn. 518, 533, 457 A.2d 656 (1983) (presumption that confirmation slip received in the due course of mail); *DiSimone* v. *Vitello,* 6 Conn. App. 390, 393, 505 A.2d 745 (1986) (presumption from clerk's notation of mailing of copy of decision, and in absence of a finding to the contrary, that parties received it). We find that there were sufficient grounds for the referee's finding that the postman had made two attempts to deliver the certified notice of cancellation before returning it to the defendant. The policy was cancelled pursuant to its terms.

There is no error.

In this opinion the other judges concurred.