[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a complex breach of contract action that is before me on remand from the Appellate Court. Patron v. Konover,35 Conn. App. 504, 646 A.2d 901, cert. denied, 231 Conn. 929,648 A.2d 879 (1994). The case was originally tried before the Hon. Norris O'Neill, but Judge O'Neill has disqualified himself from the proceedings on remand. The Appellate Court remanded the case for recomputation of the award of damages. A portion of this recomputation is purely arithmetical, but part of it involves a further factual determination by the trial court. This is because a proper calculation of prejudgment interest requires a factual determination as to the date of the notice of default. 35 Conn. App. at 520 n. 13. In addition to making this determination, I must rule on the Plaintiffs' Motion for Award of Costs and their separate, Motion for Supplemental Attorneys' Fees. CT Page 2533 These motions were filed on November 7, 1994, shortly after the Supreme Court had denied certification of the appeal. The defendants object to these motions on both temporal and substantive grounds. The contested matters will be considered in turn.
I. NOTICE OF DEFAULT
Given the posture of the case, my task involving the calculation of prejudgment interest is an extremely limited one. There is no question that a default has occurred and that a wrongful withholding of money occurred after that default. My sole task is to determine when the default occurred. In making this: determination, my parameters of decision are even further limited. The Appellate Court has already held that a default could occur only pursuant to article 22(a) of the contract.35 Conn. App. at 518. Moreover, the parties agree that there are only two possible documents that may constitute a notice of default. The first document is a letter of November 30, 1990 from David F. Hannan ("Hannan"), a Florida attorney representing the plaintiffs to Michael C. Konover ("Konover"). The second document is a letter of May 9, 1991 from Robert L. Patron ("Patron") to Konover and his attorneys. There is no doubt that the May 9, 1991 letter is an adequate notice of default.35 Conn. App. at 520 n. 13. The sole question, as now framed by the parties, is whether the November 30, 1991 letter also "constitutes the requisite notice." Id.
A brief description of the competing documents is useful. The November 30, 1990 letter is an attorney letter addressed solely to Konover and sent certified mail. It states that Konover has failed to pay certain amounts due under the contract and that "[t]he Patron's patience has been exhausted." It demands remittance of certain sums within ten days of its receipt and asks for explanations of certain other obligations. It closes by stating that if the demanded money and explanations are not forthcoming, "the Patrons will immediately avail themselves of the remedies in the [contract]."
The May 9, 1991 letter is addressed both to Konover and Sorokin Sorokin, P.C., c/o Jerome Lovesky in Hartford. It was sent both by Federal Express and Western Union telegram. It is entitled "NOTICE OF DEFAULT." It states that Konover has breached the contract by failing to pay certain specified sums and gives him three business days to cure the default. CT Page 2534
Article 22(a) of the contract provides that an "event of default" consists of "the failure of either Party to make any monetary payment due under the terms of this Agreement within three (3) business days after the defaulting Party's receipt of notice thereof from the non-defaulting Party." See35 Conn. App. at 517. This provision must be read in conjunction with article 24 of the contract, which sets forth the requisite form of notice. Article 24 provides that "[a]ll notices shall be sent by Federal Express." If a notice is sent to Konover, a copy must be sent to "Sorokin Sorokin, P.C., c/o Jerome Lovesky, Esquire" in Hartford. In the specific case of a notice of default, notice must also be sent by Western Union telegram.
While the May 9, 1991 letter comports with the notice requirements just described, the November 30, 1990 letter does not. The first letter was not sent Federal Express, no copy was sent to Sorokin Sorokin, P.C., and no copy was sent by Western Union telegram. The plaintiffs contend that these matters of form are unimportant. They point to a line of cases construing the statutory notice provision of the highway defect statute, Conn. Gen. Stat. § 13a-144, which hold that precision in notice is not essential and that it is the essential content of the asserted notice that is controlling. See, e.g., Lussier v.Department of Transportation, 228 Conn. 343, 356-57, 636 A.2d 808
(1994). This analogy, while beguiling, is inapposite to the present context for a number of reasons.
First, the notice here is contractual rather than statutory. "It is always competent for parties to contract as to how notice shall be given, unless their contract is in conflict with law or public policy." Westmoreland v. General Accident Fire LifeAssurance Corp., 144 Conn. 265, 270, 129 A.2d 623 (1957). The contract here was negotiated between sophisticated parties assisted by counsel. Hannan, the author of the November 30, 1990 letter was one of the attorneys who had drafted the contract. Under these circumstances, it is appropriate to hold the parties to the form of notice specified in the contract.
Second, the notice requirements of the contract make the medium an integral part of the message. In order for a notice of default to be effective, it must be identified as such — not only by the judicial authority after the fact but by the parties to the contract at the time. To sophisticated parties relying on a contract that they have negotiated with the assistance of CT Page 2535 counsel, a natural means of identifying a given document as a notice of default is by determining whether it satisfies the contractual requirements for a notice of default. If a letter drafted by the very attorney who negotiated the contract fails to comport with the notice requirements of that contract, it is a fair inference that the letter in question is not a notice of default.
Third, it does not seem to be too much to require that a notice of default drafted by an attorney expressly say that it is a notice of default. The May 9, 1991 letter does so. The November 30, 1990 letter does not. The November 30, 1990 letter threatens to invoke certain remedies provided in the contract. It is a fair implication from this threat (coupled with the failure of the November 30, 1990 letter to either follow the prescribed form of a contractual notice of default or to describe itself as a notice of default) that the sending of an actual notice of default still lay in the future. The events that unfolded bear this interpretation out. The actual notice of default was sent on May 9, 1991.
Finally, Hannan specifically testified at trial that the letter of November 30, 1990 was not intended to be a notice of default. He further testified that there was no notice of default until May 9, 1991. (T. 52-53.) He further explained that, prior to the latter date, the parties were still negotiating. (T. 62.) This testimony of the very attorney who both negotiated the contract and wrote the November 30, 1990 letter is entitled to considerable weight.
For the above-described reasons, the May 9, 1991 letter constitutes the requisite notice of default and the November 30, 1990 letter does not.
II. COSTS
Section 23(g) of the contract, as amended, allows the non-defaulting party to sue the defaulting party "and to recover reasonable costs and attorney's fees incurred in connection therewith." The plaintiffs now ask for certain costs — primarily travel expenses — that they claim are due under this contractual provision over the above the taxable costs that have already been assessed pursuant to Conn. Gen. Stat. § 52-257. The defendants argue that contractual "costs" and statutory "costs" are one and the same, so that no additional sum is due. I do not CT Page 2536 reach this argument because, under the somewhat peculiar circumstances of this case, I find that the plaintiffs' claim for additional costs assertedly due under the contract has been waived.
A brief chronological summary makes the plaintiffs' waiver apparent. The original complaint is dated May 15, 1991. In paragraph 6 of that document's prayer for relief, the plaintiffs specifically requested that "Patron be awarded its costs, disbursements and attorneys' fees incurred in connection with the prosecution of this action." The plaintiffs subsequently filed an amended complaint dated September 19, 1991. The amended complaint did not contain the prayer for relief in the original complaint just cited. In its place; the plaintiffs simply requested "[r]easonable attorneys fees."
The trial occurred on October 27-28, 1992 before Judge O'Neill. The plaintiffs proceeded on the basis of their amended complaint. The issue of contractual costs was not raised before Judge O'Neill at any time. In contrast, the prayer for attorneys' fees was vigorously pursued. In a document entitled Final Summary of Claim dated November 3, 1992 and filed with the plaintiffs' Post-Trial Brief of that date, the plaintiffs specifically requested $91,745.30 in attorneys' fees. In his Memorandum of Decision filed on December 31, 1992, Judge O'Neill awarded the slightly lesser sum of $91,682.30. Judge O'Neill later granted an order for a supplemental prejudgment remedy on April 5, 1993 and filed an articulation on May 7, 1993. The issue of contractual costs was not raised before him at any time during these proceedings. In fact, the issue of contractual costs was not raised before Judge O'Neill at any time in the history of this case.
It must be emphasized that the plaintiffs' claim is for contractual costs over and above statutory costs already taxed. Under our practice, statutory costs need not be specifically requested in the complaint. Here, however, the plaintiffs are seeking additional relief under the contract. The record unambiguously shows that the plaintiffs specifically requested such additional relief in their original complaint, that they withdrew that specific request in their amended complaint, and that they at no time even mentioned their now-abandoned request before the trial judge before, during, or after trial. At the same time, their request for attorneys' fees was vigorously pursued. The only possible conclusion to draw from this CT Page 2537 combination of circumstances is that the original request for contractual costs was abandoned, dead, and buried. It is far too late to resurrect it now. The Motion for Award of Costs is denied.
IV. ATTORNEYS' FEES
As just described, the plaintiffs' claim for attorneys' fees — unlike their claim for contractual costs — has been vigorously pursued throughout the litigation. The contract, as amended, allows the court to award reasonable attorneys fees to the non-defaulting party. Judge O'Neill awarded the plaintiffs $91,682.30 for attorneys' fees up to the date of his December 31, 1992 memorandum of decision. This award is not questioned by either party. The plaintiffs now request additional attorneys' fees for pursuing a post-trial supplemental prejudgment remedy and defending the case on appeal. For reasons about to be explained, I find that an award of attorneys' fees is appropriate for the supplemental prejudgment remedy but not for the appeal.
A temporal matter must be considered prior to a review of the merits. The defendants claim that even the most meritorious claim for attorneys' fees cannot be filed more than four months after judgment has originally entered in the trial court. As the defendants see it, the granting of attorneys' fees constitutes a reopening of the judgment, and the motion for attorneys' fees is thus, in effect, a motion to reopen the judgment. If this view is correct, Conn. Gen. Stat. § 52-212a would require such a motion to be filed within four months of the date on which judgment entered. This view is incorrect.
In awarding reasonable attorneys' fees pursuant to either contractual or statutory provisions, the litigational success or lack of success of the party seeking fees must naturally be considered. Hensley v. Eckerhart, 461 U.S. 424 (1983). "Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits — an inquiry that cannot even commence until one party has `prevailed.'" White v.New Hampshire Department of Employment Security, 455 U.S. 445,451-52 (1982). White, which construes the attorneys' fee provision of 42 U.S.C. § 1988, quotes with approval the succinct statement of the Fifth Circuit on this point. "`[A] motion for attorney's fees is unlike a motion to alter or amend a judgment. It does not imply a change in the judgment, but merely seeks what CT Page 2538 is due because of the judgment.'" Id. at 452 (quoting Knightonv. Watkins, 616 F.2d 795, 797 (5th Cir. 1980)). Moreover, asWhite explains, a rule viewing fee requests as motions to modify judgments would lead to much confusion and promote piecemeal litigation. 455 U.S. at 452-53.
This logic is fully applicable to the relationship — or lack of relationship — between a motion for attorneys' fees and Conn. Gen. Stat § 52-212a. A motion for attorneys' fees is not a motion to modify judgment and is not subject to the four-month rule of § 52-212a. The plaintiffs have consistently sought attorneys' fees throughout this litigation and filed their latest motion shortly after the conclusion of the appeal. There is no evidence whatsoever that this timing has caused the defendants any unfair surprise or prejudice. See White, supra,455 U.S. at 454. Under these circumstances, the Motion for Supplemental Attorneys' Fees is not time-barred. The merits of the motion may consequently be considered.
The plaintiffs first seek an award of $3,525 for pursuing their supplemental prejudgment remedy. As already mentioned, they were successful in pursuing this remedy — which Judge O'Neill granted on April 5, 1993. Judge O'Neill found the plaintiffs to be the non-defaulting party. The plaintiffs are unquestionably entitled to an award of attorneys' fees for this endeavor. On the question of amount, the defendants at argument questioned the degree to which the supplemental prejudgment remedy had actually been contested but specifically declined to present evidence on the reasonableness of the amounts sought by the plaintiffs. Given this concession, and considering the magnitude of the sums at issue in this case, an award to the plaintiffs of $3,525 in attorneys' fees for pursuing their supplemental prejudgment remedy is reasonable and is hereby granted.
An award of additional attorneys' fees to the plaintiffs for defending the appeal is not appropriate. The defendants presented three issues on appeal. 35 Conn. App. at 505-06. As the opinion of the Appellate Court shows, the defendants squarely prevailed in the Appellate Court on two of these issues. The third issue — the question of prejudgment interest — was remanded to this court for further findings, and, as the first part of the present opinion demonstrates, the defendants have squarely prevailed on that issue as well. A fourth issue was listed as an issue in the defendants' appellate brief but that CT Page 2539 issue was never actually briefed. 35 Conn. App. at 505 n. 3. It is thus fair to say that the plaintiffs achieved no success on appeal whatsoever. This is a critical factor in determining the reasonableness of a request for attorneys' fees, since "[t]he result is what matters." Hensley v. Eckerhart, supra,461 U.S. at 435. Any award of appellate attorneys' fees to the plaintiffs under these circumstances would be unreasonable.
For the above-stated reasons, the Motion for Supplemental Attorneys' Fees is granted to the extent that the plaintiffs are awarded $3,525 for pursuing supplemental prejudgment proceedings. The motion is otherwise denied.
This opinion addresses the outstanding contested matters in this case. Certain other matters are not contested. The parties are ordered to submit proposed orders within ten days of the date of this decision.
Jon C. Blue Judge of the Superior Court