[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #114
FACTS
CT Page 1319-F
The plaintiffs, Kenneth Joy Ehrhart and Margaret Ehrhart, commenced this action against the defendants, Metropolitan Property and Casualty Insurance Company (Metropolitan) and Citicorp Mortgage Inc. (Citicorp), on November 29, 1994, by service of a writ of summons and complaint. The complaint is in four counts. Counts one and two are directed against Metropolitan and counts three and four are directed against Citicorp. The defendant, Metropolitan, filed the present motion for summary judgment as to counts one and two of the complaint on September 25, 1995.
The complaint alleges that on or about November 10, 1989, the defendant, Metropolitan, issued a homeowner's insurance policy to the plaintiffs. The policy was issued to insure the dwelling house of the plaintiffs located at 7 Cedar Hill Road, formerly 15 Cedar Hill Road. The homeowner's policy was renewable each year upon payment of the annual premium policy. The first count of the complaint alleges that on August 24, 1994, the plaintiffs' dwelling house was damaged by fire. This count also alleges that the policy issued by Metropolitan was in effect at the time of the fire and that the plaintiffs fulfilled the terms, conditions and requirements of the policy. The complaint further alleges that Metropolitan has refused to pay the plaintiffs under the terms of the policy for the loss and damages they sustained as a result of the fire.
The second count of the complaint is also directed against Metropolitan and alleges violation of the Connecticut Unfair Trade Practices Act (CUTPA). The third and fourth counts of the complaint directed against Citicorp are not at issue for purposes of the motion for summary judgment as these counts are not directed against Metropolitan.
Metropolitan filed an answer on January 23, 1995, wherein it denies that the policy at issue was in effect on August 24, 1994. The defendant also denies the allegation that "[t]he plaintiffs have fulfilled all the terms, conditions and requirements of the policy to be performed on their part." (Paragraph 6 of the First and Second Count of the Plaintiffs' Complaint.)
The defendant, Metropolitan, now moves for summary judgment as to the first and second count of the plaintiffs' complaint. In support of its motion, the defendant filed a memorandum of law and attached supporting documentation including the plaintiffs' responses to the defendant's request for admissions (Defendant's CT Page 1319-G Exhibit 1), a copy of the insurance binder for the Metropolitan policy bearing an effective date of November 10, 1989 (Defendant's Exhibit A), the affidavit of Janice Y. Patterson, an employee of Metropolitan (Defendant's Exhibit 2) with various documents attached.[1] In addition, Metropolitan filed a supplemental memorandum of law in support of its motion for summary judgment and attached a certified copy of the policy at issue to its memorandum.[2]
The affidavit of Janice Y. Patterson,[3] submitted by Metropolitan in support of its motion for summary judgment (Defendant's Exhibit 2) sets out the following pertinent facts: The policy issued to the plaintiffs "was an annual renewable policy effective as of November 10, 1989 for a period of one year subject to renewal. The [plaintiffs] indicated on the application that they wished to be billed directly for all annual premiums, and Metropolitan's billing records for the entire period that the policy remained in effect indicate that all premium notices were sent to the [plaintiffs] at the address given by them in the application for insurance. The initial annual premium for the policy was $315." (Defendant's Exhibit 2 ¶¶ 4 and 5).
"On October 5, 1990, Metropolitan sent the [plaintiffs] an annual premium notice offering to renew their policy for the period of November 10, 1990 to November 9, 1991. The amount of the annual premium was $327. On October 29, 1990, Metropolitan received a payment in the amount of $327. On October 4, 1991, Metropolitan sent the [plaintiffs] an annual premium notice offering to renew their policy for the period of November 10, 1991 to November 8, 1991. The amount of the annual premium was $333. On November 12, 1991, Metropolitan received a payment in the amount of $327, leaving a deficiency of $6.00. On November 12, 1991, Metropolitan, consistent with its business practices, sent the [plaintiffs] a premium deficit bill in the amount of $6.00. On December 6, 1991, Metropolitan received a payment in the amount of $6.00. On October 6, 1992, Metropolitan sent the [plaintiffs] an annual premium notice offering to renew their policy for the period of November 10, 1992 to November 9, 1993. The amount of the annual premium was $379. On November 13, 1992, Metropolitan received a payment in the amount of $327, leaving a deficit of $52. On November 13, 1992, Metropolitan, consistent with its business practices, sent the [plaintiffs] a premium deficit bill in the amount of $52. On August 9, 1993, Metropolitan, consistent with its business practices, sent the [plaintiffs] a second premium deficit bill in the amount of $52." (Defendant's Exhibit 2 ¶¶ 7 through 17). CT Page 1319-H
"On September 9, 1993, Metropolitan sent the insureds a cancellation notice stating that if the outstanding premium deficiency was not received by September 21, 1993, their policy would be cancelled." (Defendant's Exhibit 2 ¶ 18). A copy of the notice and certificate of mailing was attached to the affidavit as Exhibit A. "Because the insureds failed to pay the premium deficiency, the policy was cancelled on September 21, 1993. On September 23, 1993, Metropolitan sent a notice to Citicorp Mortgage, Inc. ("Citicorp"), the [plaintiffs'] first mortgagee, that the insureds' policy had been cancelled and that Citicorp's mortgagee coverage would be cancelled as of October 5, 1993." (Defendant's Exhibit 2 ¶¶ 19 and 20). A copy of the notice of cancellation and certificate of mailing was attached to the affidavit as Exhibit B.
"On November 17, 1993, Metropolitan received a payment in the amount of $327. Because the [plaintiffs] no longer had insurance coverage with Metropolitan as their policy had been cancelled, Metropolitan, consistent with its business practices, deposited this payment in its account and sent a check in the amount of $327. to the [plaintiffs] on November 18, 1993. On October 4, 1994, Metropolitan placed a "stop payment" order on the November 18, 1993 check. On October 5, 1994, Metropolitan sent a new check in the amount of $327 to the [plaintiffs] which [as of September 15, 1995 had] not been cashed. All policy changes received by Metropolitan, including requests to change either an insured's or mortgagee's address, or to change the person to whom premium notices should be sent, are entered into [Metropolitan's] electronic files and can be verified by a review of those files. Metropolitan did not receive any request to change any of the information contained in the insured's account at any time." (Defendant's Exhibit 2 ¶¶ 21, 22 and 23).
In addition to the affidavit, the defendant filed a copy of the application for insurance or binder which indicates the plaintiffs' mailing address was 15 Cedar Hill Road in New Milford, Connecticut. The application also indicates that the plaintiff marked an "X" in the box next to "insured" for "bill mode."[4]
The plaintiffs timely filed an objection to the motion for summary judgment and a memorandum of law. Documents in support of the plaintiffs opposition included an affidavit signed by the plaintiff Kenneth Joy Ehrhart, a copy of the binder for the Metropolitan policy, a copy of the disclosure/settlement statement CT Page 1319-I showing an escrow payment for the future payment of homeowner's insurance payments, a copy of Citicorp's records showing payments to Metropolitan and a copy of a letter sent to the Ehrharts by Citicorp dated August 25, 1994, indicating that the homeowner's policy at issue was cancelled effective September 21, 1993 and that notification of same was received "recently."
The plaintiff's affidavit indicates that "[s]ometime after November 10, 1989, the address for [his] property was changed from 15 Cedar Hill Road to 7 Cedar Hill Road, New Milford, and a change of address was filed with Citicorp Mortgage." (Plaintiff's affidavit ¶ 6.) The affidavit also states that the plaintiffs made escrow payments to Citicorp for the purpose of paying annual homeowner's insurance on the property. The affidavit indicates that the property was damaged on August 24, 1994, and that Metropolitan was immediately notified of the loss. Attached to the affidavit is a copy of a letter dated August 25, 1994 from Citicorp. The letter, addressed to the plaintiffs at 7 Cedar Hill Road, indicates that the insurance policy on their home was cancelled effective September 21, 1993. The plaintiffs claim this is the first notification they ever received concerning the cancellation of the homeowner's coverage. (Plaintiff's Affidavit ¶ 8).
According to the plaintiff's affidavit, he had been making mortgage payments to Citicorp between November 10, 1989 and August 24, 1994 and these payments included escrow payments. The plaintiff further states that he received an annual statement for the escrow account showing that the annual premium was made by Citicorp through November 1993. A copy of the annual statement was attached to the plaintiff's memorandum as exhibit D.
The plaintiff also states that he never received any communications from Metropolitan indicating the premium had increased or that the policy had been cancelled. The only communication the plaintiff indicates he received from Metropolitan was marketing information for its products. (Plaintiff's Affidavit ¶ 11). Additionally, the plaintiff claims he never received any phone calls from Metropolitan or from Citicorp indicating that the policy was cancelled and that to the best of his knowledge and belief all payments made to Metropolitan for premiums on his homeowner's insurance were paid through Citicorp.
Summary judgment shall be granted "if the pleadings, affidavits and any other proof submitted show that there is no CT Page 1319-J genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. "Practice Book § 384. "A motion for summary judgment shall be supported by such documents as may be appropriate, including . . . affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like." Practice Book Sec. 380. "[M]ere conclusions are insufficient as is evidence which would be inadmissible upon the trial, such as hearsay." Farrell v. Farrell,182 Conn. 34, 39, 438 A.2d 415 (1980).
"The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (citations omitted; internal quotation marks omitted.) Suarez v. DickmontPlastics Corp., 229 Conn. 99, 105, 639 A.2d 507 (1994). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380. The movant has the burden of showing the non-existence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." (Citations omitted; internal quotation marks omitted.) Burns v. Hartford Hospital,192 Conn. 451, 455, 472 A.2d 1257 (1984).
"A `material fact' has been defined adequately and simply as a fact which will make a difference in the result of a case.United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364,379, 260 A.2d 596 (1969). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Strada v. ConnecticutNewspapers, Inc., 193 Conn. 313, 317, 477 A.2d 1005 (1984).
The threshold issue in this case is whether the policy was in effect on the date of the loss or had been cancelled on September 21, 1993, by virtue of the notice of cancellation for nonpayment of the yearly premium. The defendant argues that the court should grant summary judgment because the policy was not in effect on the date of the loss as it had been cancelled on September 23, 1993, by virtue of the notice of cancellation mailed to the plaintiffs for nonpayment of the full amount due on the premium. The plaintiffs CT Page 1319-K argue that the policy was in effect and that they never received notice of the cancellation nor did they receive a reimbursement check for the amount that was paid until after the loss and submission of a claim to Metropolitan.
The plaintiffs argue that summary judgment is "apt to be ill adapted to cases of a complex nature or to those involving important public issues, which often need the full exploration of trial. United Oil Co. v. Urban Redevelopment Commission, supra,158 Conn. 375. Although the plaintiffs are correct in noting that summary judgment is inappropriate where the issues in the case are complex, it is noted at the outset that the issues in this case are not of a complex nature and can be fully explored on the motion for summary judgment as ample supporting documents have been submitted along with the motion.
Additionally, the plaintiffs argue that Metropolitan has not shown that the plaintiffs received notice of the "purported" cancellation. "Actual receipt by an insured of such notice is generally a condition precedent to valid cancellation of the policy, and cancellation notice contained in letter [sic] mailed by the insurer but not received by the insured is ineffective as a valid cancellation." DiProspero v. Nationwide Mutual Fire Ins.Co., 30 Conn. Sup. 291, 294-95 311 A.2d 561 (1973). (Plaintiffs' Memorandum of Law In Support of Objection to Defendant's Motion For Summary Judgment, p. 5). The plaintiffs reliance on DiProspero is not only misplaced, the above quoted language, although cited as a direct quote, omits the portion of the language that is controlling in this case. In addition, the language is quoted so as to appear to be reciting a full sentence when, in fact, only a portion of the language is set forth. Not only does the court consider the plaintiffs use of this case to be incorrect, it finds it to be misleading. The language of the case cited by the plaintiffs is as follow: "Where the statute, or policy provision, requires the"giving" of notice to the insured, without stipulating any form orway in which the notice must be given, actual receipt by the insured of such notice is generally recognized as a condition precedent to valid cancelation of the policy. Therefore, a cancelation notice contained in a letter mailed by the insurer but not received by the insured is ineffective as a valid cancelation. . . ." (Emphasis added; citations omitted.) Id.
The plaintiffs argument that the defendant has not shown that it in fact ever mailed notices of cancellation to Citicorp is also incorrect. Attached to the defendant's memorandum of law was CT Page 1319-L supporting documentation in the form of an affidavit which contains the following attestation: "On September 9, 1993, Metropolitan sent the insureds a cancellation notice stating that if the outstanding premium deficiency was not received by September 21, 1993, their policy would be cancelled. "(Defendant's Exhibit 2 ¶ 18). A copy of the notice and certificate of mailing was attached to the affidavit as Exhibit A. In addition, the affidavit states that" [b]ecause the insureds failed to pay the premium deficiency, the policy was cancelled on September 21, 1993. On September 23, 1993, Metropolitan sent a notice to Citicorp Mortgage, Inc. ("Citicorp"), the [plaintiffs'] first mortgagee, that the insureds' policy had been cancelled and that Citicorp's mortgagee coverage would be cancelled as of October 5, 1993." (Affidavit of Janice Y. Patterson, Defendant's EXhibit 2). A copy of the notice and certificate of mailing was attached to the affidavit.
As argued by the defendant, "[s]trict compliance by an insurer with the statutory mandates and policy provisions as to notice is essential to effect a cancellation through such notice . . . . Any ambiguities in the notice will be construed in favor of the insured." (citations omitted.) Travelers Ins. Co. v. Hendrickson,1 Conn. App. 409, 412, 472 A.2d 356 (1984). The defendant relies on a number of Supreme and Appellate Court cases for its argument that actual receipt of the cancellation notice is not required to effectuate cancellation. Specifically, the defendant cites the case of Westmoreland v. General Accident Fire Life AssuranceCorp., 144 Conn. 265, 270, 129 A.2d 623 (1957), wherein the court stated that "[i]t is always competent for parties to contract as to how notice shall be given, unless their contract is in conflict with law or public policy. When they do so contract, the giving of notice by the method contracted for is sufficient whether it results in actual notice or not." Id. See also, Stratton v.Abington Mutual Fire Ins. Co., 9 Conn. App. 557, 562, 520 A.2d 617, cert. denied, 203 Conn. 807, 525 A.2d 522 (1987).
The defendant argues that the policy was controlling because there is no statute which controls the mailing of notice in the present case. Ordinarily, General Statutes § 38a-323(a) would control the notice requirements for the policy at issue in this case. General statutes § 38a-323(a) states in pertinent part: "On or after October 1, 1986, no insurer shall refuse to renew any policy which is subject to the requirements of sections 38a-663 to38a-697, inclusive, unless such insurer or its agent shall send, by registered or certified mail or by mail evidenced by a certificate of mailing, or deliver to the named insured, at the address shown CT Page 1319-M in the policy, at least sixty days' advance notice of its intention not to renew. The notice of intent not to renew shall state or be accompanied by a statement specifying the reason for such nonrenewal. This section shall not apply: (1) In case of nonpayment of premium . . . ." Id. The statute is not at issue in this case because. by its plain language, it is not applicable "[i]n case of nonpayment of premium." The plaintiffs failed to pay the full premium when it was due thereby giving rise to the cancellation of the policy. Therefore, in keeping with Westmoreland, supra, the notice of cancellation provision set forth in the policy endorsement controls.
The cancellation provision of the policy states in pertinent part:
 We may cancel this policy by delivering to you, or by mailing to you, at your last known address shown on our records, notice stating when such cancellation will be effective. This not ice :
 A. will be sent to you not less than 10 days prior to the effective date of cancellation if you have not paid your
premium when it is due; or
 B. will state the reasons for cancellation, the date cancellation takes effect and that excess premium, if' not tendered, will be refunded on demand. This notice will be mailed not less than 30 days prior to the effective date of cancellation . . . .
"When the provision in a policy is that notice by mail is sufficient, that provision is broad enough to cover all the kinds of mail which are commonly used to convey messages's Westmorelandv. General Accident F. L. Assurance Corporation, supra, 144 Conn. 271. Mailing in a special form that furnishes proof of delivery is just as much "mailing" as ordinary mail. In this case, the defendant has supplied the court with the certificate of mailing. The cancellation notice was "mailed" in accordance with the terms of the policy to the last known address of the plaintiffs as set forth in the defendant's records and actual receipt of the notice of cancellation, harsh as it may seem, is not required either by the policy or precedent.
The court finds under the facts of this case that the insurer complied with the contractual provisions for cancelling the policy CT Page 1319-N and had no further duty to notify the plaintiff of its action. The notice of cancellation was mailed to the last known address of the plaintiffs in keeping with the policy cancellation provision.
For the foregoing reasons, the court finds that there is no genuine issue of material fact and therefore grants the defendant's motion for summary judgment as to counts one and two of the plaintiffs' complaint.
PICKETT, J.