******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LEE DEER ET AL. *v.* NATIONAL GENERAL
INSURANCE COMPANY ET AL.
(AC 45509)
(AC 45510)

LEE DEER ET AL. *v.* THE TRAHAN
AGENCY, INC., ET AL.
(AC 45511)

Bright, C. J., and Cradle and Palmer, Js.

*Syllabus*

In each of two cases arising from the nonrenewal of a homeowners insurance
policy, the plaintiffs, K and L, appealed from the judgment of the trial
court granting the motions for summary judgment filed by the defendant
insurance companies, N Co. and C Co., and the defendant insurance
agents, T Co. and T. K purchased a homeowners insurance policy with
the assistance of T Co. and T that was underwritten by C Co., and the
policy named L as an additional insured. The policy was effective for
one year, commencing in June, 2019, and terminating in June, 2020.
Shortly after the policy was issued, an inspection of the plaintiffs' home
was conducted at the behest of the insurance companies, which revealed
that a portion of the exterior of the home was missing siding. B, a home
inspection assistant acting on behalf of the insurance companies, sent
an email to P, the office manager of T Co., stating that proof of repair
was required no later than March, 2020, as a condition of continued
coverage. B sent a follow-up email to P in March, 2020, noting that the
policy was set to nonrenew due to a lack of response and that proof
of the repairs was required by the policy expiration date. The plaintiffs
claimed that they did not receive communication from P or anyone else
from T Co. regarding the inspection, the necessary repairs, or the risk
of nonrenewal. In April, 2020, C Co. sent a notice of nonrenewal to K
and T Co. by certified mail. The plaintiffs disputed receipt of this letter,
and the United States Postal Service tracking system indicated that,
although a notice and two reminders were left at the plaintiffs' address,
approximately two weeks after the initial delivery attempt, the letter
was deemed unclaimed and was returned to C Co. The policy expired
in June, 2020. Less than three weeks later, the plaintiffs' home was
destroyed in an accidental fire. When the plaintiffs made a claim under
the policy, they learned that it had not been renewed. The plaintiffs
commenced the first action alleging, inter alia, that the insurance compa-
nies had breached the terms of the policy and had violated the applicable
statute (§ 38a-323) by failing to ensure that the plaintiffs received actual
notice of nonrenewal and that the insurance agents were negligent in

their failure to notify the plaintiffs of the insurance companies' intention not to renew the policy. The trial court granted the insurance agents' motion to strike the count against them. Thereafter, the plaintiffs filed a substitute complaint repleading the negligence count against the insurance agents and further alleging against them a violation of the Connecticut Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq) based on a violation of the Connecticut Unfair Insurance Practices Act (CUIPA) (§ 38a-815 et seq.), and a breach of the implied covenant of good faith and fair dealing. The trial court granted the insurance agents' motion to strike with respect to the CUIPA and CUTPA claims but denied it with respect to the breach of the implied covenant of good faith and fair dealing claim. The plaintiffs then filed a second action against the insurance agents, alleging that they had violated CUIPA and CUTPA by, inter alia, holding themselves out as exclusive agents of A Co., another insurance company, and not fully informing their customers that they were not being insured by A Co.'s homeowners insurance. The two actions were consolidated. Subsequently, the trial court granted the motion for summary judgment filed by the insurance companies in the first action and the motions for summary judgment filed by the insurance agents in the first action and the second action, and the plaintiffs filed three separate appeals with this court. *Held*:

1. The trial court properly granted the insurance companies' motion for summary judgment in the first action:

a. The plaintiffs' claim that C Co.'s mailing of the notice of nonrenewal was insufficient to comply with the notice requirements of § 38a-323 was not persuasive: § 38a-323 (a) (1) plainly provides that an insurer could send by registered or certified mail *or* could deliver to the insured notice of its intention not to renew, and the plaintiffs' interpretation of the statute requiring actual notice would render meaningless the language affording the insurer the option to send the notice and specifying the manner in which it could be sent; moreover, § 38a-323 (c), which refers to an insurer's failure to "provide" the insured with the required notice of nonrenewal, was required to be read in the context of the entire statute and could not logically or reasonably be construed to impose a different or additional notice obligation on the insurance companies than that required under § 38a-323 (a) (1); furthermore, in light of the plain and straightforward language of § 38a-323, this court declined to consider the legislative history of the statute, which the plaintiffs claimed supported their assertion that actual notice of nonrenewal was required.

b. C Co. did not breach the terms of the insurance policy by failing to provide the plaintiffs with actual notice of nonrenewal: the policy provision governing nonrenewal did not require actual notice but, rather, stated that written notice could be delivered *or* mailed, which requirement was fully consistent with the notice obligations of § 38a-323; moreover, the interpretation of the policy advocated by the plaintiffs requiring

actual notice ignored the policy language advising the plaintiffs that written notice could be mailed.

c. N Co. was entitled to summary judgment because there was no privity of contract between the plaintiffs and N Co.: there was no dispute that the plaintiffs' policy was underwritten by C Co. and that there was no privity between the plaintiffs and N Co., and, although the evidence may have suggested that N Co. had some possible involvement in the processing of the policy or some affiliation with C Co., the plaintiffs provided no legal authority for the proposition that such involvement could form the basis for liability under either § 38a-323 or the insurance policy; moreover, even if N Co. had played a role in the issuing, underwriting, or processing of the policy, such that its alleged conduct could have potentially rendered it liable to the plaintiffs, it would have been entitled to summary judgment for the same reasons that C Co. was entitled to summary judgment.

2. The trial court properly granted the insurance agents' motions for summary judgment in both the first and the second actions:

a. The trial court properly granted the insurance agents' motion for summary judgment in the first action with respect to the plaintiffs' common-law negligence claim: the plaintiffs' contention on appeal that the insurance agents had a duty to notify them of the inspection results following receipt of the same and that such duty was separate from the duty that the insurance agents allegedly owed to provide notice of the impending nonrenewal of the insurance policy was unpreserved, as it was not properly raised in the plaintiffs' operative complaint, in their trial court memoranda, or at the hearing on the motions for summary judgment, and, accordingly, this court declined to review the claim; moreover, the trial court properly concluded that the insurance agents had no duty to provide notice of nonrenewal to the plaintiffs because the agency relationship between the parties terminated on procurement of the policy, as the plaintiffs failed to adduce evidence sufficient to give rise to a factual issue regarding their claim that a relationship existed between the parties that imposed on the insurance agents an ongoing duty of care to the plaintiffs.

b. The trial court properly granted the insurance agents' motion for summary judgment in the first action with respect to the issue of whether they complied with the notice requirements of § 38a-323: this court did not need to decide whether the insurance agents were acting as agents of the insurance companies for purposes of § 38a-323 because, under the statute, notice could be provided by either the insurer or its agent, and this court determined that the insurance companies complied with § 38a-323 by mailing the notice of nonrenewal to K.

c. The trial court properly granted the insurance agents' motion for summary judgment in the second action with respect to the plaintiffs' claim alleging violations of CUIPA and CUTPA: although the plaintiffs' evidence established an ascertainable loss, namely, the damages arising

from the loss of their home after the insurance policy was not renewed, they failed to raise a genuine issue of material fact with respect to causation of harm, as they failed to provide any evidence or explanation as to how being insured by C Co. instead of A Co. was a substantial factor in that loss.

Argued October 4, 2023—officially released May 28, 2024

*Procedural History*

Action, in the first case, to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New London, and transferred to the judicial district of Hartford, and action, in the second case, to recover damages for, inter alia, violation of the Connecticut Unfair Insurance Practices Act, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the cases were consolidated and transferred to the Complex Litigation Docket; thereafter, the court, *Schuman, J.*, granted the motion to strike filed by the defendant The Trahan Agency, Inc., et al. in the first case; subsequently, the court, *Schuman, J.*, granted in part the motion to strike filed in the first case by the defendant The Trahan Agency, Inc., et al. with respect to the plaintiffs' substitute complaint; thereafter, in each case, the court, *Noble, J.*, granted the defendants' motions for summary judgment, denied the plaintiffs' motions for summary judgment, and rendered judgment thereon, from which the plaintiffs filed three separate appeals with this court. *Affirmed.*

*Joseph M. Barnes*, with whom, on the brief, were *Robert I. Reardon, Jr.*, and *Kelly E. Reardon*, for the appellants (plaintiffs).

*Lee S. Siegel*, for the appellees in Docket No. 45509 (named defendant et al.).

*Cara D. Joyce*, with whom, on the brief, was *Robert W. Cassot*, for the appellees in Docket Nos. 45510 and 45511 (defendant The Trahan Agency, Inc., et al.).

*Opinion*

PALMER, J. These three appeals involve two consolidated actions arising from the nonrenewal of a homeowners insurance policy. The plaintiffs, Lee Deer and Keleen Deer, appeal from the judgments of the trial court granting the motions for summary judgment filed by the defendant insurance companies, National General Insurance Company (National General) and Century-National Insurance Company (Century-National) (collectively, insurance companies), and the defendant insurance agents, Kevin Trahan and The Trahan Agency, Inc. (collectively, Trahan defendants).[1] On appeal, the plaintiffs claim, among other things, that the court improperly granted the defendants' motions because, on the basis of the undisputed facts, the defendants failed as a matter of law to provide them with adequate notice of the nonrenewal of their policy. We affirm the judgments of the trial court.

The record reveals the following undisputed facts and procedural history. The plaintiffs own a home located at 52 Gurley Road in Waterford. Keleen Deer, with assistance from The Trahan Agency, Inc., purchased a homeowners insurance policy underwritten by Century-National. Lee Deer is named as an additional insured under the policy. The policy was effective from June 27, 2019, until June 27, 2020, and provided, among other things, coverage for damage to the dwelling up to a limit of $361,442.

Shortly after the policy was issued, an inspection of the plaintiffs' home conducted at the behest of the

---

[1] The trial court also denied the motions for summary judgment filed by the plaintiffs against each of the defendants. Because the court's reasoning with respect to both the plaintiffs' and the defendants' motions for summary judgment is identical, and because the court's decision granting the defendants' summary judgment motions necessarily resolves the plaintiffs' motions against them, we refer hereinafter only to the defendants' motions for summary judgment.

insurance companies revealed that a portion of the exterior of the home was missing siding. On July 24, 2019, Vanessia Babbitt, a home inspection assistant acting on behalf of the insurance companies, sent an email to Jessica Perry, The Trahan Agency, Inc.'s office manager, concerning the results of the inspection. The email included the home inspection report as an attachment and stated that the "[m]issing siding on [the] exterior walls" needed repair. The email further stated, "Please discuss the situation with your insured, as repairs are required as a condition of continued coverage" and indicated that proof of repair was required no later than March 27, 2020. Babbitt sent a follow-up email to Perry on March 27, 2020, stating: "We have not received a response regarding the . . . request for repairs . . . [namely] [m]issing siding on the exterior walls. Due to not receiving a response the policy has been set to non-renew. Please submit proof of repairs . . . by the policy expiration date." The plaintiffs contend they never received any communication from Perry, or anyone else from The Trahan Agency, Inc., regarding the inspection, the necessary repairs, or the risk of nonrenewal.

On April 19, 2020, Century-National issued a notice of nonrenewal, sent by certified mail, to Keleen Deer and The Trahan Agency, Inc.[2] The notice provided that "[t]his insurance is no longer acceptable due to the inspection report . . . [that] revealed conditions which increase the exposure to loss and prevent your home from meeting underwriting guidelines. Written requests regarding the following concern/repairs have been sent but proof of compliance has not been received." The notice identified the "concern/repairs"

[2] The nonrenewal provision of the policy provides: "We may elect not to renew this policy and may do so by letting you know in writing at least 60 days before the expiration date of this policy. The written notice, stating the reasons for nonrenewal, may be delivered to you, or mailed to you at your mailing address shown in the Declarations by registered mail, certified mail or United States Postal Service certificate of mailing."

at issue as the "[m]issing siding on the exterior walls." The notice also stated that, "[i]n order to have this notice rescinded we must receive proof that repairs have been completed to the company's satisfaction prior to the non-renewal date on this notice," and listed the nonrenewal date as June 27, 2020, at 12:01 a.m.

The plaintiffs dispute receipt of the notice of nonrenewal. A mail carrier with the United States Postal Service first attempted delivery of the notice of nonrenewal on April 23, 2020, but noted in the tracking system: "Notice Left (No Authorized Recipient Available) . . . ." Two subsequent reminders were left at the plaintiffs' address. The postal service declared the notice "[u]nclaimed" on May 6, 2020, and returned the letter to Century-National.

The policy expired on June 27, 2020. On July 15, 2020, the plaintiffs' home was destroyed in an accidental fire. When the plaintiffs made a claim under the policy, they learned that the policy had not been renewed.

Thereafter, in August, 2020, the plaintiffs brought an action against the defendants (first action). The plaintiffs alleged that the insurance companies breached the terms of the policy and violated General Statutes § 38a-323[3] by failing to ensure that the plaintiffs received actual notice of nonrenewal (count one); violated the Connecticut Unfair Insurance Practices Act (CUIPA),

---

[3] General Statutes § 38a-323 provides in relevant part: "(a) (1) No insurer shall refuse to renew any policy . . . unless such insurer or its agent sends, by registered or certified mail or by mail evidenced by a certificate of mailing, or delivers to the named insured, at the address shown in the policy, or, if agreed between the insurer and the named insured, by electronic means, at least sixty days' advance notice of its intention not to renew. The notice of intent not to renew shall state or be accompanied by a statement specifying the reason for such nonrenewal.

\* \* \*

"(c) Failure of the insurer or its agent to provide the insured with the required notice of nonrenewal . . . shall entitle the insured to: (1) Renewal of the policy for a term of not less than one year . . . ."

General Statutes § 38a-815 et seq., and the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. (count two); acted in bad faith (count three); and breached the implied covenant of good faith and fair dealing (count four). In count five, the plaintiffs asserted a negligence claim against the Trahan defendants for their failure to notify the plaintiffs of the insurance companies' intention not to renew the policy based on common-law negligence, a violation of § 38a-323, and a breach of fiduciary duty.

The Trahan defendants filed a motion to strike the negligence claim against them, as set forth in count five of the plaintiffs' complaint, on the ground that it failed to state a claim upon which relief could be granted. In support of their motion, the Trahan defendants asserted that the plaintiffs sought "to impose a duty upon the undersigned defendants, as an insurance agent [and agency], [that] is not recognized in Connecticut."

Over the plaintiffs' objection, the court, *Schuman, J.*, granted the motion to strike. Judge Schuman concluded that § 38a-323 does not apply to the Trahan defendants because they are insurance brokers and not agents of the insurance companies; the Trahan defendants did not have a duty to provide notice of nonrenewal to the plaintiffs under the common law because the agency relationship between the parties terminated upon the procurement of the policy pursuant to *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, 109 Conn. App. 560, 565–66, 952 A.2d 818, cert. denied, 289 Conn. 940, 959 A.2d 1007 (2008) (*Precision Mechanical*); and the plaintiffs failed to sufficiently allege a cause of action for breach of a fiduciary duty because, inter alia, the common law does not recognize the existence of a fiduciary relationship between an insurance broker and an insured.

After Judge Schuman granted the motion to strike, the plaintiffs filed a substitute complaint repleading the

negligence count against the Trahan defendants and adding two new counts against them, alleging a violation of CUTPA based on a violation of CUIPA and a breach of the implied covenant of good faith and fair dealing. The Trahan defendants filed an objection to the new counts, which Judge Schuman sustained in part and overruled in part. Specifically, Judge Schuman struck the CUTPA count, explaining that "[t]he CUTPA count necessarily alleges violations of CUIPA, which would raise the new issue of general business practice, would undoubtedly entail significant new discovery demands, and would essentially change the nature of the case. The plaintiffs may well still have the ability to bring this claim independently." Judge Schuman did not strike the count alleging a breach of the implied covenant of good faith and fair dealing because it was "reasonably related to the detailed negligence allegations of count five and therefore fits with Connecticut's liberal policy regarding pleading amendments."

Thereafter, the plaintiffs filed a separate action against the Trahan defendants (second action), alleging that they violated CUIPA and CUTPA by, inter alia, "using deceitful and misleading practices by not fully informing their customers that they were not being insured with Allstate [Insurance Company (Allstate)] homeowners insurance" after holding themselves out as "exclusive Allstate . . . representative[s]"; failing to notify the plaintiffs of the insurance companies' notices regarding the results of the inspection; and failing to inform the plaintiffs that the policy would not be renewed unless the missing siding was repaired.

All of the parties subsequently filed motions for summary judgment in both actions. The actions had been consolidated and transferred to the Complex Litigation Docket in the judicial district of Hartford. The court, *Noble, J.*, heard argument on these motions on January 5, 2022.

On May 3, 2022, Judge Noble issued a memorandum of decision granting the insurance companies' motion for summary judgment in the first action. Judge Noble explained that a review of the plaintiffs' policy revealed that the issuing company was Century-National and not National General; the terms of the policy did not require Century-National to provide actual notice of nonrenewal; and, similarly, § 38a-323 (a) (1) permitted notice by certified mail, as Century-National had done, and proof of receipt of notice was not required.

On May 4, 2022, Judge Noble issued separate orders granting the motions for summary judgment filed by the Trahan defendants in the first and second actions. In the orders, Judge Noble explained that he was adopting the analysis employed by Judge Schuman in granting the motion to strike. These three appeals followed.[4]

Before turning to the plaintiffs' claims, we set forth the applicable standard of review. "The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts [that],

---

[4] The three appeals are Docket No. AC 45509, which is the plaintiffs' appeal from the summary judgment rendered in favor of the insurance companies in the first action; Docket No. AC 45510, which is the plaintiffs' appeal from the summary judgment rendered in favor of the Trahan defendants in the first action; and Docket No. AC 45511, which is the plaintiffs' appeal from the summary judgment rendered in favor of the Trahan defendants in the second action.

under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact [that] will make a difference in the result of the case. . . . Finally, the scope of our review of the trial court's decision to grant the [defendants'] motion[s] for summary judgment is plenary." (Internal quotation marks omitted.) *Day* v. *Seblatnigg*, 341 Conn. 815, 825, 268 A.3d 595 (2022).

I

AC 45509

In Docket No. AC 45509, the plaintiffs appeal from the judgment of the trial court granting the motion for summary judgment in the first action, in which the plaintiffs had claimed that the insurance companies violated § 38a-323 and breached the terms of the policy by failing to ensure that the plaintiffs received actual notice of nonrenewal. We reject the plaintiffs' contention that the trial court improperly rendered summary judgment for the insurance companies in the first action.

The following additional procedural history is relevant to our disposition of this appeal. In the court's May 3, 2022 memorandum of decision granting the insurance companies' motion for summary judgment, the court explained: "As an initial matter, a review of the policy at issue reveals that the issuing company was Century-National and not National General. Therefore, summary judgment enters in favor of National General. . . .

"[With respect to the issue of notice of nonrenewal, the plaintiffs] argue that this [policy] mandates actual notice because of the language that nonrenewal may be done 'by letting you know in writing at least 60

days before the expiration date of this policy' of the nonrenewal.[5] This phrase, in their view, clearly and unambiguously established a standard of actual notice. The argument ignores the language that Century-National *may* let them know of the nonrenewal and the following language that provides the means by which notice may be provided, i.e., delivery to them, [or] mail at their mailing address by registered, certified mail or United States Postal Service certificate of mailing. Delivery, the only certain method of ensuring actual notice, is one of several means by which the notice of nonrenewal may be made. . . . The phrase 'letting you know,' read in context with the rest of the paragraph, may only reasonably be interpreted to mean that Century-National will advise the insured of a nonrenewal by one of several means, one of which, delivery, will result in actual notice, and the others may not.

"The [plaintiffs] also argue that the attempt at nonrenewal runs afoul of . . . § 38a-323 (a) (1) . . . . Giving the words and phrases of the nonrenewal statute their plain and ordinary meaning leaves no room for ambiguity or dispute—it is the sending of, inter alia, the certified mail that satisfies the statute. No proof of receipt is required. The legislature afforded several options for a carrier to be compliant with the statute—sending by registered mail, sending by certified mail, a certificate of mailing, or, in the alternative, delivery to the named insured. The statute mandates no requirement that upon sending the appropriate notice, an insurer must thereafter confirm actual receipt, otherwise the mailing options would be redundant with the delivery option. Such a construct renders the word 'delivers' superfluous and unreasonable.

"Connecticut courts have repeatedly found that . . . sending notice of cancellation [of an insurance policy]

---

[5] The nonrenewal language of the policy is set forth in footnote 2 of this opinion.

by certified mail (see [General Statutes] § 38a-343 (a)[6]), satisfies an insurer's obligations to its insured. The Connecticut Supreme Court articulated that there is no actual receipt requirement when a provision allows notice by certified mail. *Westmoreland* v. *General Accident Fire & Life Assurance Corp., Ltd.*, 144 Conn. 265, 270, 129 A.2d 623 (1957). [Our] Supreme Court held that mailing, without proof of actual receipt, was sufficient to cancel coverage. '[T]he giving of notice by the method contracted for is sufficient whether it results in actual notice or not.' Id. In a different context, the [Appellate Court] found that actual receipt was immaterial when a contract permitted notice via certified mail. *Scoville* v. *Shop-Rite Supermarkets, Inc.*, 86 Conn. App. 426, [434–35], 863 A.2d 211 (2004), [cert. denied, 272 Conn. 921, 867 A.2d 838 (2005)]. The Appellate Court observed that when the contract permits notice by certified mail, actual receipt is not contemplated. Moreover, '[a]ny rule that provides that the risk of delivery of certified mail should be placed solely on the sender would set a dangerous precedent. There are many variables associated with any type of mail delivery that are out of the control of either party, such as misdelivery or late delivery. In addition, by placing the risk solely on the optionee, the optionor could intentionally avoid accepting delivery until after the terminal date had passed.'[7] Id., 433. The court finds this reasoning persuasive, and binding, that the notice required by § 38a-323 was provided by Century-National." (Citation omitted;

---

[6] General Statutes § 38a-343 (a) provides in relevant part that no cancellation of a policy to which that statutory subsection applies "shall be effective unless the notice is delivered or sent by the insurer to the named insured . . . by registered mail, certified mail, [or] mail evidenced by a certificate of mailing . . . ."

[7] "The [Appellate Court] declined to speculate, as this court does, 'as to whether there was any avoidance of the letter in this case. [It] merely point[ed] out that a rule that places the risk on the sender may allow for uncertainty and manipulation of the contracting process.' [*Scoville* v. *Shop-Rite Supermarkets, Inc.*, supra, 86 Conn. App.] 433 n.8."

emphasis in original; footnotes added; footnote in original.)

On appeal, the plaintiffs claim that the trial court improperly concluded that the insurance companies were entitled to summary judgment because (1) Century-National[8] failed to provide actual notice of its intention not to renew the policy pursuant to § 38a-323, (2) Century-National failed to provide actual notice of nonrenewal pursuant to the terms of the insurance policy, and (3) the court failed to consider evidence demonstrating that National General was involved in the processing and management of their insurance policy.[9] We address each claim in turn.

A

The plaintiffs first claim that Century-National's mailing of the notice of nonrenewal, without ensuring that it subsequently was delivered to and received by the plaintiffs, was insufficient to comply with the notice requirements of § 38a-323. Specifically, they contend that subsection (c) of § 38a-323, which sets forth the remedies available for an insurer's failure to provide the required notice, and the legislative history of the

---

[8] Although the plaintiffs direct their first and second claims against both National General and Century-National, it is undisputed that their insurance policy was underwritten by Century-National. Consequently, as we explain more fully in part I C of this opinion, only Century-National, and not National General, potentially could be liable to the plaintiffs. Accordingly, our discussion of the plaintiffs' first two claims is limited to Century-National.

[9] The plaintiffs also claim that they presented sufficient evidence to rebut any presumption under the mailbox rule that they received the notice after it was mailed. See *Britto* v. *Bimbo Foods, Inc.*, 217 Conn. App. 134, 141 n.10, 287 A.3d 1140 (2022) ("[t]he mailbox rule provides that a properly stamped and addressed letter that is placed into a mailbox or handed over to the United States Postal Service raises a rebuttable presumption that it will be received" (internal quotation marks omitted)), cert. denied, 346 Conn. 921, 291 A.3d 1040 (2023). In light of our conclusion, as explained in part I A and B of this opinion, that receipt of notice was not required under either § 38a-323 (a) or the terms of the policy, we need not address the plaintiffs' contention regarding the mailbox rule.

statute, demonstrate that "actual notice" is required. We are not persuaded.

Analysis of this claim "raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . .

"A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation . . . . When a statute is not plain and unambiguous, among other things, we look for interpretive guidance . . . to the legislative policy [the statute] was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) *Belgada* v. *Hy's Livery Service, Inc.*, 220 Conn. App. 102, 118–19, 297 A.3d 199 (2023).

Section 38a-323 (a) (1) provides in relevant part that the owner of an insurance policy subject to the terms

of that statutory provision is entitled to renewal of the policy unless the insurer "sends, by registered or certified mail . . . or delivers to the named insured, at the address shown in the policy . . . at least sixty days' advance notice of its intention not to renew. . . ." We agree with the trial court that, under the clear and unambiguous language of § 38a-323 (a) (1), sending a notice of nonrenewal by certified mail, as Century-National undisputedly did in the present case, satisfies the statutory notice requirement. Although the plaintiffs contend that an insurer is required to provide "actual notice" of nonrenewal—that is, to ensure both delivery *and receipt* of the notice—§ 38a-323 (a) (1) plainly provides that an insurer may decline to renew a policy after it "*sends*, by registered or certified mail . . . *or delivers* to the named insured . . . advance notice of its intention not to renew. . . ." (Emphasis added.) General Statutes § 38a-323 (a) (1). Because the methods by which an insurer may satisfy the notice requirement of § 38a-323 are framed in the disjunctive, any one of them will suffice. See *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 838, 251 A.3d 56 (2020) ("[o]rdinarily, [t]he use of the disjunctive or between the two parts of the statute indicates a clear legislative intent of separability" (internal quotation marks omitted)).[10]

Indeed, the interpretation of § 38a-323 (a) (1) advanced by the plaintiffs would render meaningless the language of that provision affording the insurer the

---

[10] We recognize that "[t]he disjunctive or can be construed as and where such construction clearly appears to have been the legislative intent." (Internal quotation marks omitted.) *777 Residential, LLC* v. *Metropolitan District Commission*, supra, 336 Conn. 838. The present case, however, is distinguishable from cases in which "or" has been interpreted to mean "and," as the plaintiffs have not claimed or demonstrated that the terms "sends" and "delivers" are defined synonymously. See id., 838–39 (disjunctive "or" not interpreted as "and" where statutory terms at issue were not defined synonymously).

option to send the notice and specifying the manner in which it may be sent. "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010).

The plaintiffs maintain that their contention regarding the requirement of actual notice is supported by § 38a-323 (c), which provides that the insurer's "[f]ailure . . . to *provide the insured* with the required notice of nonrenewal" entitles the insured to renewal of the policy for a term of not less than one year. (Emphasis added.) Subsection (c) of § 38a-323, however, must be read in the context of the entire statute, including, of course, § 38a-323 (a) (1). See *Torres* v. *Kunze*, 106 Conn. App. 802, 807, 945 A.2d 472 (2008) ("A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole." (Internal quotation marks omitted.)). The "required notice" that an insurer is obligated to provide under § 38a-323 (c) is expressly delineated in § 38a-323 (a) (1), and the use of the word "provide" in § 38a-323 (c) cannot logically or reasonably be construed to impose a different or additional notice obligation on the insurer.

The plaintiffs also argue that the legislative history of § 38a-323 supports the conclusion that the legislature intended actual notice of nonrenewal to be received by

an insured before the insurer may opt not to renew the policy. We will not consider the legislative history, however, in view of the provision's plain and straightforward language. "Where the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intent of the legislature and there is no need for statutory construction or a review of the legislative history." (Internal quotation marks omitted.) *Gaudett* v. *Bridgeport Police Dept.*, 218 Conn. App. 720, 729, 293 A.3d 351 (2023); see also General Statutes § 1-2z. The statutory text clearly indicates that an insurer's obligation may be satisfied by sending the notice of nonrenewal by certified mail; General Statutes § 38a-323 (a) (1); and the plaintiffs concede that the notice in the present case was sent in this manner. Accordingly, the trial court properly rendered summary judgment in favor of Century-National on the plaintiffs' claim under § 38a-323.

B

The plaintiffs also assert that Century-National breached the terms of the insurance policy by failing to provide actual notice of nonrenewal. In support of this contention, the plaintiffs rely on the policy language providing that Century-National may elect not to renew the policy "by letting [them] know" of that decision in writing. See footnote 2 of this opinion. In addition, the plaintiffs argue that the nonrenewal language of the policy was added as a special provision, modifying the standard policy, to be consistent with what the plaintiffs contend is the requirement under § 38a-323 of "actual receipt by the insureds of the notice . . . ." We disagree.

Our standard of review for interpreting insurance policies is well settled. "The construction of an insurance policy presents a question of law that we review de novo. . . . Insurance policies are interpreted based

on the same rules that govern the interpretation of contracts. . . . In accordance with those rules, [t]he determinative question is the intent of the parties . . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured . . . ." (Citations omitted; internal quotation marks omitted.) *Warzecha* v. *USAA Casualty Ins. Co.*, 206 Conn. App. 188, 191–92, 259 A.3d 1251 (2021).

"It is always competent for parties to contract as to how notice shall be given, unless their contract is in conflict with law or public policy. When they do so contract, the giving of a notice by the method contracted for is sufficient whether it results in actual notice or not." (Internal quotation marks omitted.) *Stratton* v. *Abington Mutual Fire Ins. Co.*, 9 Conn. App. 557, 562, 520 A.2d 617, cert. denied, 203 Conn. 807, 525 A.2d 522 (1987); see also *Westmoreland* v. *General Accident Fire & Life Assurance Corp.*, supra, 144 Conn. 270; *Scoville* v. *Shop-Rite Supermarkets, Inc.*, supra, 86 Conn. App. 434.

It is apparent that, like § 38a-323 (a) (1), the policy provision governing nonrenewal does not require that the plaintiffs receive actual notice of nonrenewal. The policy provides that, if Century-National elects not to

renew the policy, it "may do so by letting you know in writing at least 60 days before the expiration date of this policy," and, further, that such notice "may be delivered to you, or mailed to you at your mailing address . . . by registered mail, [or] certified mail . . . ."[11]

Sending a notice of nonrenewal by certified mail, as Century-National did in the present case, complies with the express terms of the policy. The policy plainly informs the plaintiffs that the written notice "may be delivered to you, *or mailed* to you"; (emphasis added); which, contrary to the plaintiffs' argument, is fully consistent with an insurer's notice obligation under § 38a-323. See part I A of this opinion. As with the language of § 38a-323, the policy's use of the disjunctive "or" indicates that either method of providing notice is sufficient to comply with the terms of the policy; see *Connecticut Ins. Guaranty Assn.* v. *Drown*, 314 Conn. 161, 189, 101 A.3d 200 (2014); and the policy interpretation that the plaintiffs advocate simply ignores the language advising the plaintiffs that the written notice may be mailed to them. See *Karas* v. *Liberty Ins. Corp.*, 335 Conn. 62, 96, 228 A.3d 1012 (2019) ("[s]ince it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction" (internal quotation marks omitted)). Accordingly, we conclude that the court properly rendered summary judgment in favor of Century-National on the plaintiffs' claim under the policy.[12]

---

[11] The general terms of the policy set forth a nonrenewal provision that states: "We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice." The operative language of the policy, however, as discussed previously, is contained in an endorsement of special provisions applicable to Connecticut policies.

[12] The plaintiffs also maintain that the trial court improperly rendered summary judgment for the insurance companies on the plaintiffs' claim that Century-National refused to honor the terms of the policy in bad faith in violation of CUIPA and CUTPA. The plaintiffs' bad faith claim necessarily

## C

The plaintiffs further argue that the court, in granting the motion for summary judgment in favor of National General, failed to properly consider certain evidence demonstrating a genuine issue of material fact that National General was involved in the processing and management of their policy. National General responds that it was entitled to summary judgment because, as the plaintiffs acknowledge, there was no privity of contract between the plaintiffs and National General. We agree with National General.

The following additional procedural history is relevant to this claim. At the hearing on the parties' motions for summary judgment, the following colloquy took place between the court and the plaintiffs' counsel regarding National General's involvement with the plaintiffs:

"The Court: . . . [A]s part of the [insurance companies'] motions for summary judgment, [National General] indicated that it didn't write the policy and it had no contractual relationship with your clients, the contractual relationship [was] with [Century-National]. I didn't see any evidentiary opposition to that assertion solely as to [National General], did I miss it or?

"[The Plaintiffs' Counsel]: Only referenced to the various documents that were provided to the plaintiff[s] from [National General] that indicates [National General] was involved in this. I guess at the end of the day, to be completely honest, it probably doesn't matter much even from a practical standpoint because there is a defendant and an insurance company here. But the argument was that the various documents that were provided by [National General], they did list [National

---

fails, however, in light of our conclusion that Century-National did not breach the terms of the policy.

General] so. But you're correct, Your Honor, you didn't see much other than maybe a few letter[s].

"The Court: And there's no policy in so far as you know, and you have no basis to establish that there's a policy from [National General] with your clients?

"[The Plaintiffs' Counsel]: Correct.

"The Court: So that the breach of contract claims, the bad faith, which would need to have a contractual basis, any claim that would be dependent upon the existence of an insurance contract between [National General] and your clients [are] entitled to summary judgment?

"[The Plaintiffs' Counsel]: Correct."

On appeal, the plaintiffs challenge the trial court's decision granting National General's motion for summary judgment based on the court's determination that the issuing company was Century-National and not National General. In support of their contention, the plaintiffs point to certain evidence that, they claim, tends to establish that National General was involved in processing and managing the plaintiffs' policy.[13] There is no dispute, however, that, as reflected on the first page of the policy, on the policy's signature page, and in the notice of nonrenewal, the plaintiffs' policy was underwritten by Century-National, and there was no

[13] Specifically, the evidence identified by the plaintiffs includes the declarations page of the policy, which mentions National General; the notice of nonrenewal, which lists "National General" on the return address and "NatGen Premier" on the letterhead; the United States Postal Service electronic delivery confirmation for the notice of nonrenewal, which lists "National General" on the address for the return receipt, indicates that it was returned to that address, and lists the recipient who signed for the delivery as being located at "NGIC"; the emails from Babbitt to Perry regarding the results of the inspection, which indicate that Babbitt is associated with "NatGen Premier," as listed in her signature block; and email correspondence regarding the plaintiffs' insurance claim after the fire, which includes individuals using email addresses with the domain "@ngic.com."

privity between the plaintiffs and National General. Although the evidence may suggest some possible involvement by National General in the processing of the policy, or some affiliation or association between National General and Century-National,[14] the plaintiffs offer no legal authority, and we are aware of none, for the proposition that such involvement can form a basis for liability under either § 38a-323 or the terms of the contract at issue in the present case. See *Travinski* v. *General Ins. Co. of America*, 224 Conn. App. 838, 846, A.3d (2024) (this court was unaware of any legal authority for proposition that affiliation or involvement that certain other insurance companies had with named defendant as underwriter of insurance policy could form basis for liability under terms of policy).

Moreover, even if National General had played a role in the issuing, underwriting or processing of the policy, such that its alleged conduct, like that of Century-National, could potentially have rendered it liable to the plaintiffs, National General would be entitled to summary judgment on the merits of the plaintiffs' claim for the same reasons that Century-National is entitled to summary judgment. See part I A and B of this opinion. We therefore agree with National General that the court properly rendered summary judgment in its favor.

II

AC 45510 & AC 45511

In Docket Nos. AC 45510 and AC 45511, the plaintiffs appeal from the judgments of the trial court, *Noble, J.*, granting the motions for summary judgment filed by

---

[14] On appeal, the insurance companies represent that National General is "a sister subsidiary company of Century-National under the National General Holdings Corp. banner . . . ." This representation by the insurance companies is consistent with the evidence before the trial court indicating that both Century-National and National General are members of the National General Insurance Group.

the Trahan defendants in the first and second actions.[15] The following additional procedural history is relevant to our disposition of these appeals. In granting the Trahan defendants' motions for summary judgment, the court explained that it was relying on Judge Schuman's analysis in granting the motion to strike: "The court adopts the well reasoned analysis set forth in the decision of the court, *Schuman, J.*, in his memorandum of decision [on the motion to strike], which concluded that there is no duty imposed on the Trahan defendants by virtue of . . . § 38a-323 (a) (1) and that an insurance agent has no duty to notify the plaintiffs of the impending nonrenewal of the policy or their receipt of the notice of nonrenewal. . . . In the absence of any duty or imposition of liability pursuant to § 38a-323, the defendants' motion for summary judgment is granted and the plaintiffs' motion is denied." (Citation omitted.)

In Judge Schuman's decision granting the motion to strike, he explained that "[t]he plaintiffs' incorporation of § 38a-323 (a) and (c) seems almost inadvertent. They do not specifically entitle count five as a statutory cause of action. Other than incorporating the statutes by reference as part of a wholesale incorporation of count one, the plaintiffs do not expressly mention or cite the statutes, much less allege the elements of a statutory violation by the Trahan defendants. In any event, the statute does not apply to the Trahan defendants. Section 38a-323 (a) (1) does include the term 'agent' . . . . But neither the statute nor any related statutes provide a definition of the term 'agent' or any indication that the term refers to an insurance broker. In fact, when the legislature has sought to address the separate category of insurance 'brokers,' it has used that term expressly. . . . There is no reason to believe that § 38a-323

---

[15] The briefs filed by the parties are identical in both appeals. In addition, the two appeals, although not consolidated, were heard together at oral argument in this court pursuant to an order of this court.

changes what the Appellate Court has described as the 'general rule' that 'the agency relationship between a broker and the insured terminates upon procurement of the requested insurance policy.' *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, [supra, 109 Conn. App. 565–66]. Thus, the better interpretation of the term 'agent' in § 38a-323 is that it refers to an employee or contractor of the insurance company specifically charged with the duty of sending notice of cancellation, rather than an 'agent' as a synonym for insurance broker." (Citation omitted.)

Judge Schuman next concluded that the Trahan defendants did not have a duty to provide notice of nonrenewal or cancellation to the plaintiffs under the common law. Judge Schuman explained: "Our appellate courts have recognized that an insurance broker becomes the agent of the insured [w]hen procuring insurance for a person [or entity]. . . . But, as mentioned, and as summarized in *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, [109 Conn. App. 565–66], the general rule is that the agency relationship between a broker and the insured terminates upon procurement of the requested insurance policy. In other words, [o]nce that purpose is accomplished . . . and the insurance is procured, the agency relationship between the insured and the broker terminates, and the broker is without any authority to do anything which further affects the insured unless expressly or impliedly authorized by the insured to do so. [Id., 565] . . . . The logical consequence is that the broker has no duty to provide a subsequent notice of cancellation to the insureds.

"Both sides, however, rely on other language in *Precision Mechanical* to advance their positions. The plaintiffs observe that the *Precision Mechanical* court quoted general language from other sources suggesting that brokers do have a duty to inform their insureds of

cancellation. . . . As the defendants suggest, however, these quotations do not state the actual holding of the Appellate Court. . . . Although the Appellate Court did, in passing, quote from the other sources as indicated, the actual holding of the court was that the broker had a duty to notify the insureds because the broker made erroneous misstatements to the plaintiff that the plaintiff's policy remained in effect during the time that a fire occurred. . . . There were thus special circumstances, involving culpable acts or omissions by the broker, that justified departure from the general rule. . . .

"Here the plaintiffs do not allege any special circumstances that imposed any duty on the broker to notify the plaintiffs about impending cancellation. The plaintiffs do allege that the Trahan defendants had acted as their insurance agent for several years prior to the fire and that the plaintiffs had come to rely on the [Trahan] defendants to ensure that various policies were active and up-to-date. . . . The plaintiffs also allege that the Trahan defendants advised the plaintiffs in writing that the plaintiffs should contact [them] if the plaintiffs had questions about the policy or if they would like to review their coverage or report a claim. . . . But these contacts appear routine and do not involve a level of blameworthiness as in *Precision Mechanical* or the other cases. The same is true of the fact, as alleged, that the insurers sent a copy of the notice of cancellation to the broker. The broker could reasonably assume, based on the general rule, that the insurers would also notify the insureds. The court concludes that, under the facts alleged, there is no basis for an exception to the general rule that the broker does not have a duty to notify the insured of a policy's forthcoming cancellation." (Citations omitted; internal quotation marks omitted.)

Judge Schuman finally concluded that count five of the plaintiffs' complaint failed to state a cause of action

for breach of a fiduciary duty. Specifically, Judge Schuman stated: "Our appellate courts have apparently not held that there is a fiduciary relationship between an insurance broker and an insured at any point in their dealings. It seems most unlikely that our courts would find a fiduciary relationship after the broker has procured the insurance policy when the courts have already held that there is generally no agency relationship after that point. . . . Further, notification of cancellation of a policy, while extremely important, does not involve the sort of 'superior knowledge, skill or expertise' that forms the basis of a fiduciary relationship." (Citation omitted.)

On appeal, in Docket No. AC 45510, the plaintiffs claim that Judge Noble improperly rendered summary judgment in favor of the Trahan defendants because, contrary to the court's conclusion, the Trahan defendants (1) owed a common-law duty of care to provide the plaintiffs with notice of the results of the failed inspection and notice of the nonrenewal of their policy, and (2) failed to comply with the notice requirements of § 38a-323. In Docket No. AC 45511, the plaintiffs contend that Judge Noble improperly rendered summary judgment in favor of the Trahan defendants on their clam in the second action that the Trahan defendants violated CUIPA and CUTPA by virtue of their deceptive and misleading advertising practices, which, according to the plaintiffs, caused them to believe that their homeowners insurance policy was issued by Allstate.[16] We address each claim in turn.

### A

The plaintiffs first contend that the trial court improperly rendered summary judgment in favor of the Trahan

---

[16] Like their claim in Docket No. AC 45509, the plaintiffs also contend that they presented sufficient evidence to rebut any presumption under the mailbox rule that they received the notice after it was mailed. We do not consider this claim, however, for the same reason we did not address it in the plaintiffs' appeal in Docket No. AC 45509. See footnote 9 of this opinion.

defendants on their common-law negligence claim. Specifically, the plaintiffs assert that the Trahan defendants owed a duty to provide them notice of (1) the results of the inspection, and (2) the nonrenewal of their policy. The Trahan defendants respond that (1) the plaintiffs failed to adequately preserve their claim that the Trahan defendants had a duty to provide notice of the inspection results, and (2) the court properly concluded that the Trahan defendants had no duty to provide notice of nonrenewal because the agency relationship between the parties terminated upon procurement of the policy. We agree with the Trahan defendants.

1

We first address the Trahan defendants' contention that the plaintiffs failed to preserve their claim that the Trahan defendants had a duty to notify them of the inspection results. "Our appellate courts, as a general practice, will not review claims made for the first time on appeal. We repeatedly have held that [a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Eichten*, 184 Conn. App. 727, 756, 196 A.3d 328 (2018). "The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The purpose of our preservation requirements is to ensure fair notice of a party's claims to both the trial court and opposing parties." (Citations omitted; emphasis in original; internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 620, 99 A.3d 1079 (2014). "[T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court [and the opposing party] on reasonable notice of that very same

claim." (Internal quotation marks omitted.) *Lowthert* v. *Freedom of Information Commission*, 220 Conn. App. 48, 56–57, 297 A.3d 218 (2023).

In addition, as previously noted, Judge Noble rejected the plaintiffs' common-law negligence claim in reliance on Judge Schuman's analysis in his decision granting the Trahan defendants' motion to strike. Judge Schuman's decision, however, did not address the inspection issue because that claim was not before him. Consequently, Judge Noble's decision also does not purport to address that claim. Because, as we explain hereinafter, the plaintiffs did not file a motion for articulation with respect to that claim, we treat the claim as having been rejected.[17] See, e.g., *Tremont Public Advisors, LLC* v. *Connecticut Resources Recovery Authority*, 333 Conn. 672, 685, 217 A.3d 953 (2019) ("[a]lthough the trial court did not expressly address the plaintiff's contentions that it was entitled to sovereign immunity and immunity pursuant to 15 U.S.C. § 35, it implicitly rejected those claims"); *Bank of New York Mellon* v. *Horsey*, 182 Conn. App. 417, 441–42, 190 A.3d 105 (holding that court "implicitly rejected" defendant's claim at hearing, where defendant never sought articulation of subsequent ruling), cert. denied, 330 Conn. 928, 194 A.3d 1195 (2018).

Our review of the record reveals that the issue of the Trahan defendants' failure to notify the plaintiffs of the inspection results was not properly raised by the plaintiffs in the trial court. The negligence count of the plaintiffs' operative complaint in the first action includes allegations pertaining to the Trahan defendants' "ample opportunity to notify the plaintiffs concerning the necessity of correcting the missing exterior

---

[17] In light of our conclusion hereinafter that the inspection claim was not properly raised in the trial court, there is reason to believe that Judge Noble did not address the claim for that reason. Although we cannot resolve that question definitively given the silent record, we have no need to do so.

siding," but only in the context of the Trahan defendants' alleged duty to inform the plaintiffs of Century-National's "intention not to renew [their policy]." The plaintiffs focused on the notice of nonrenewal that the Trahan defendants had received on April 19, 2020, and alleged that the Trahan defendants' duty to notify the plaintiffs arose after that date. The plaintiffs did not allege that the Trahan defendants had a duty to provide them notice of the inspection results that they received on July 24, 2019, more than six months earlier.[18]

In the factual recitation set forth by the plaintiffs in their memorandum in support of their motion for summary judgment,[19] they state that they "were not aware that an inspection had been performed and were not informed of the results of the inspection until after the July 15, 2020 fire." In the portion of their memorandum addressing their negligence claim, however, they did not argue that the Trahan defendants had a duty to inform the plaintiffs of those inspection results, focusing, rather, on their claim that the defendants had failed to provide them with notice of the nonrenewal of their policy.

In the plaintiffs' memorandum in opposition to the Trahan defendants' motion for summary judgment, the plaintiffs again referred to the inspection, but not in the context of claiming that the Trahan defendants had a duty to inform them of the inspection results. Specifically, in response to the Trahan defendants' contention that their duty to the plaintiffs ended upon procurement of the policy, the plaintiffs maintained that the policy

---

[18] At oral argument in this court, the plaintiffs' counsel observed that the plaintiffs raised the issue of the inspection results in their complaint in the second action. That complaint, however, concerned the plaintiffs' separate CUIPA/CUTPA claim against the Trahan defendants, not their claim sounding in common-law negligence.

[19] See footnote 1 of this opinion.

had not yet been finalized because of the failed inspection. The plaintiffs argued: "The home inspection, which revealed the missing siding, and [the insurance companies'] decision to nonrenew and terminate coverage flows directly from [the Trahan defendants'] attempts to secure homeowners coverage with [the insurance companies] on behalf of the [the plaintiffs] in June of 2019. On July 24, 2019, approximately one month after submitting the insurance application with [the Trahan defendants], [the insurance companies] notified [those defendants], not the [plaintiffs], that repairs to the missing siding were required to continue coverage. . . . The home inspection was required by [the insurance companies] as part of the insurance application process. The [Trahan defendants contend] that any duty owed to the plaintiffs terminates once the requested insurance has been secured. While the plaintiffs disagree with this contention, it is clear that insurance had not been finalized due to the missing siding. . . . [The Trahan defendants] had ample time to fulfill [*their*] *duty to properly inform the plaintiffs that* [*the insurance companies were*] *threatening to terminate the policy* because of the failed inspection." (Citations omitted; emphasis added.) It is apparent that this reference by the plaintiffs to the "failed inspection" was merely to identify the reason for the potential nonrenewal of the policy and was not an assertion that the Trahan defendants had a duty to notify the plaintiffs of the inspection separate and apart from their alleged duty to notify them of the nonrenewal. Indeed, the plaintiffs' reference to the "failed inspection" in their memorandum opposing the Trahan defendants' motion for summary judgment is contained in the portion of the memorandum captioned, "The [Trahan defendants] owed the plaintiffs a duty to act with reasonable skill, care, and diligence including *a duty to notify the* [*plaintiffs*] *of* [*the insurance companies'*] *decision to nonrenew their homeowners insurance policy.*" (Emphasis added.)

At the hearing conducted by the trial court on the parties' summary judgment motions, the plaintiffs' counsel argued that "[t]he inspection was part of the application process" and that "[t]he reason for the non-renewal has everything to do with the results of that inspection." The court questioned the plaintiffs' counsel as to whether the plaintiffs had previously raised such a claim, and the plaintiffs pointed to the previously referenced language in their opposition memorandum. The plaintiffs' counsel indicated that he had raised the issue of the inspection to explain why the Trahan defendants had an *ongoing duty to provide notice of the nonrenewal*, stating: "[T]he reason why this is important, why I'm bring[ing] this up, is because, to the extent that the case law suggests that any obligation of the agent terminates, any duty of the agent terminates, upon procurement of the policy, this all stems from their procurement of the policy." Subsequently, the plaintiffs' counsel also stated that "[t]he facts show that clearly there was some obligation here on the part of [the Trahan defendants] to notify their insureds [about] the siding issue and the repair issue as well as the nonrenewal. And they're connected but they are separate." Considered in the broader context of counsel's argument concerning the application process, however, this isolated statement did not clearly alert the court that the plaintiffs had alleged a separate and distinct claim that the Trahan defendants had a duty to inform the plaintiffs about the inspection results.[20]

---

[20] Moreover, even if this argument could be construed as alleging liability based on the Trahan defendants' claimed failure to notify the plaintiffs of the inspection results, separate and distinct from their alleged duty to provide notice of the nonrenewal, the plaintiffs' counsel could not properly raise such a claim for the first time at the argument on the summary judgment motions. See, e.g., *White* v. *Mazda Motor of America, Inc.*, supra, 313 Conn. 629 (plaintiff could not properly raise new theory of liability for first time in opposition to defendants' summary judgment motion when he failed to plead theory in his complaint).

Thus, we conclude that the plaintiffs' contention on appeal that the Trahan defendants had a duty to notify them of the inspection results when the Trahan defendants received those results in July, 2019, and that that duty was separate from the duty that the Trahan defendants allegedly owed to provide notice of the impending nonrenewal, was not properly raised in the plaintiffs' operative complaint, in their memoranda, or at the hearing on the motions for summary judgment.[21] Accordingly, we further conclude that the claim as framed on appeal is unpreserved and we decline to review it.

2

We next consider whether the trial court properly determined, as a matter of law, that the Trahan defendants owed no duty to the plaintiffs to notify them of the nonrenewal of the policy. The following legal principles are relevant to our evaluation of this claim. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty. . . . Although it has been said that no universal test for [duty] has ever been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. . . . Furthermore, [a] duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he

---

[21] Although not required to do so, we note that the plaintiffs could have filed a motion for reargument or reconsideration and thereby cleared up any ambiguity in the record as to the breadth of their common-law claim and the court's purported failure to consider separately whether the Trahan defendants breached a duty to the plaintiffs by not informing them of the failed inspections.

knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act. . . . Only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Citations omitted; internal quotation marks omitted.) *D'Angelo Development & Construction Corp.* v. *Cordovano*, 121 Conn. App. 165, 184–85, 995 A.2d 79, cert. denied, 297 Conn. 923, 998 A.2d 167 (2010). In addition, "[t]he issue of whether a defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, 341 Conn. 644, 680, 267 A.3d 766 (2021).

"It is well established that an insurance broker owes a duty to his principal to exercise reasonable skill, care, and diligence in effecting the insurance, and any negligence or other breach of duty on his part which defeats the insurance which [the broker] undertakes to secure will render [the broker] liable to his principal for the resulting loss. . . . Where [a broker] undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with reasonable care the duty he has assumed, and he may be held liable for loss properly attributable to his default. The principal may sue either for breach of the contract or in tort for breach of duty imposed by it. . . .

"Our Supreme Court also has held that [w]hen procuring insurance for a person [or entity], a[n] [insurance] broker becomes the agent of that person [or entity] for that purpose. . . . Once that purpose is accomplished, however, and the insurance is procured, the agency

relationship between the insured and the broker terminates, and the broker is without any authority to do anything which further affects the insured unless expressly or impliedly authorized by the insured to do so." (Citation omitted; internal quotation marks omitted.) *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 565; see also 12 E. Holmes, Appleman on Insurance (2d Ed. 1999) § 88.4, p. 721 ("[o]rdinarily, an agent or broker's obligation to his client ends with the placement of a policy unless he either agrees to do certain renewal or other servicing acts or through some understanding or pattern of conduct the insured relies on the agent or broker for that servicing").

On appeal, the plaintiffs contend that the Trahan defendants continued to owe them a duty of care, even after the policy went into effect, because a special or fiduciary relationship existed between the parties.[22] We disagree.

The plaintiffs failed to adduce evidence sufficient to give rise to a factual issue regarding their claim that a relationship existed between the parties that imposed upon the Trahan defendants an ongoing duty of care to the plaintiffs. In *Precision Mechanical*, this court recognized that there are certain circumstances in which an agency relationship may extend beyond the procurement of a policy. See *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109

---

[22] The plaintiffs also point to an affidavit from an alleged expert with experience in the insurance industry that they submitted in the trial court in opposition to the Trahan defendants' motions for summary judgment. In the affidavit, the affiant opined that the Trahan defendants owed a duty to advise their clients of the nonrenewal of policies and that they breached their duty to the plaintiffs in this case. This evidence does not create a genuine issue of material fact with respect to whether the Trahan defendants owed a duty of care to the plaintiffs because that issue presents a question of law for the court to decide. See *Gonzalez* v. *O & G Industries, Inc.*, supra, 341 Conn. 680.

Conn. App. 570. In that case, the plaintiff, Precision Mechanical Services, Inc. (Precision), submitted evidence that it had retained the defendants, T.J. Pfund Associates, Inc., and Marianne Pfund (collectively, Pfund), a brokerage firm and an insurance agent, to procure general liability insurance coverage for a period between September, 1995, and January, 1997. Id., 566. Pfund procured a policy that provided only twelve months of coverage, which commenced on September 25, 1995, and was set to expire on September 25, 1996. Id., 567.

Precision also submitted evidence that, after the policy was procured, Pfund continued to act on Precision's behalf. See id. Pfund, among other things, sought an amendment of the policy to extend coverage until January 1, 1997, as initially requested by Precision; id.; and had a discussion with Precision's president about renewal, stating that if Precision did not contact them, they would contact Precision to provide it with options for future coverage. Id., 569. Precision submitted evidence that, in May, 1996, Pfund received a copy of the insurer's notice of intent to cancel and the notice of cancellation of the policy, after Precision ceased making its monthly payments to the insurer at Pfund's advice. Id., 568, 570. Nevertheless, Pfund continued to repeatedly represent to Precision, until August 10, 1996, that its policy remained in effect until September, 1996. Id., 568, 570–71. On August 10, 1996, Precision learned from Pfund, for the first time, that the policy had been cancelled in May, 1996. Id., 569. Precision subsequently brought negligence and breach of contract claims against Pfund. Id., 561. The trial court granted Pfund's motion for summary judgment on the basis that the agency relationship between the parties had ended in September, 1995, when the policy was obtained and that Pfund thereafter owed no duty to Precision. Id., 562.

On appeal, this court determined that the trial court had improperly concluded that, as a matter of law, Pfund owed Precision no duty of care, including no duty to inform Precision that the insurer had cancelled the policy, because the agency relationship between the parties had terminated upon procurement of the policy. See id., 570. This court "agree[d] that a broker would have no liability for failing to notify the insured of the cancellation of its policy when the agency relationship had ended," but concluded that the circumstances of that case "present[ed] a different scenario." Id., 569–70. Specifically, this court concluded, on the basis of Precision's submissions, that there was a genuine issue of material fact as to the existence of an agency relationship between Precision and Pfund after September, 1995, and, therefore, the trial court improperly concluded that Pfund owed Precision no duty of care after that date. Id., 570.

In reaching this conclusion, this court recognized that, "as a general rule, the agency relationship between a broker and the insured terminates upon procurement of the requested insurance policy. . . . *However,* '[*i*]*nherent in the obligation to seek continuation of an insurance policy is the duty to notify the applicant if the insurer declines to continue* [*to insure*] *the risk,* so the applicant may not be lulled into a feeling of security or put to prejudicial delay in seeking protections elsewhere.' . . . *Lazzara* v. *Howard A. Esser, Inc.*, 802 F.2d 260, 266 (7th Cir. 1986); see also 12 E. Holmes, supra, § 86.6, p. 497 ('[a]n agent or broker cannot sit idly with a cancellation notice or information, but must seasonably inform the insured client thereby giving the client sufficient time to obtain protect[ion] with another insurer')." (Citation omitted; emphasis added.) *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates, Inc.*, supra, 109 Conn. App. 565–66.

The present case is distinguishable from *Precision Mechanical* because, in this case, the evidence submitted by the plaintiffs did not identify any actions that the Trahan defendants took after the policy was procured or any conversations between the parties to indicate that the Trahan defendants undertook an obligation to seek continuation of the policy. Here, the plaintiffs claim that a special relationship existed between the parties because of the unique degree of trust that they had established with The Trahan Agency, Inc.'s office manager, Perry, on the basis of their prior experience with her. The plaintiffs rely on the evidence they had submitted to the court describing their relationship with Perry, specifically, deposition testimony from Lee Deer, in which he stated, among other things, that they had "[a] very personal relationship with [Perry]; we trusted her, she took care of our insurance needs." He testified that they had an "unusually close" relationship with Perry and stated that they had "relied on her for years."

Unlike in *Precision Mechanical*, the plaintiffs in the present case submitted no evidence that they initially hired the Trahan defendants to obtain coverage for a period beyond the coverage period of the policy they had procured.[23] There was no evidence that the Trahan defendants affirmatively sought to extend coverage on behalf of the plaintiffs after the policy already was in effect. There was also no evidence that the parties discussed renewal or that the Trahan defendants told the plaintiffs that they would provide options for future coverage beyond the end of the policy period. In addition, in contrast to the evidence of Pfund's misstatements to Precision in *Precision Mechanical*, the plaintiffs in the present case adduced no evidence that the Trahan defendants made any representations to them

---

[23] It is undisputed that the policy remained in effect during the entire policy period, from June 27, 2019, until June 27, 2020.

that their policy would renew or remain in effect after the end of the policy period on June 27, 2020. Thus, the evidence submitted by the plaintiffs in the present case did not raise a genuine issue of material fact as to the existence of an agency relationship between the parties after the procurement of the policy on June 27, 2019, because that evidence provided no indication that the Trahan defendants undertook an obligation to seek continuation of the policy after that date.[24] See *Precision Mechanical Services, Inc.* v. *T.J. Pfund Associates,*

---

[24] Two Superior Court cases relied on by the plaintiffs, namely, *Barry* v. *Boccarossa*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-06-5000641 (October 2, 2006) (42 Conn. L. Rptr. 92), and *Kohn* v. *John M. Glover Agency, Inc.*, Superior Court, judicial district of Danbury, Docket No. CV-00-0339053 (April 24, 2001) (29 Conn. L. Rptr. 377), are also distinguishable from the present case. In *Barry*, the plaintiff, Bryan Barry, brought an action against the defendant, Steven Boccarossa, an insurance agent, alleging, inter alia, that Boccarossa failed to use reasonable care with respect to the renewal of Barry's automobile insurance policy. *Barry* v. *Boccarossa*, supra, 92. The court denied Boccarossa's motion to strike Barry's negligence claim, concluding that Boccarossa had a duty to inform Barry about a notice of cancellation. Id., 94. In that case, Barry's father allegedly had informed Boccarossa, before the policy's cancellation date, that Barry had been in an accident and that he was hospitalized. Id., 92. The court concluded that a fact finder reasonably could infer that Barry's father had contacted Boccarossa on behalf of his hospitalized son to request or authorize Boccarossa, either implicitly or explicitly, to make a claim with the insurer for Barry's benefit. Id., 93–94. The court emphasized the importance of the subsequent information that Boccarossa had received and the authorization to act on it, explaining that such contact "reestablished" the agency relationship that had terminated after the acquisition of the insurance policy. Id., 93. Moreover, the court explicitly recognized that "[t]his is not a case where the agent merely received notification of an impending cancellation and did not contact the insured." Id. In the present case, by contrast to *Barry*, there is no claim that the plaintiffs contacted the Trahan defendants after the procurement of their policy and before its nonrenewal to give the Trahan defendants express or implied authorization to take further action on their behalf.

In *Kohn*, certain personal property was stolen from the home of the plaintiffs, Kevin Kohn and Pamela Kohn, and only a portion of the loss was covered by the policy that they had procured insuring the premises and contents of their home. *Kohn* v. *John M. Glover Agency, Inc.*, supra, 29 Conn. L. Rptr. 377. The Kohns thereafter brought a negligence action against their insurance agent, the defendant, the John M. Glover Agency, Inc. (Glover

*Inc.*, supra, 109 Conn. App. 566. Accordingly, the court properly concluded, as a matter of law, that the Trahan defendants owed the plaintiffs no duty of care because the agency relationship between them terminated upon procurement of the policy.

B

The plaintiffs next argue that the trial court improperly rendered summary judgment in favor of the Trahan defendants on their claim in the first action that the Trahan defendants failed to comply with the notice requirements of § 38a-323. The Trahan defendants contend, inter alia, that § 38a-323 applies only to agents of the insurance company, not agents of the insured, and, therefore, they owed no statutory duty to the plaintiffs. The plaintiffs respond that the Trahan defendants were

Agency), claiming that their policy was inadequate and that the Glover Agency had breached a fiduciary or special relationship with the Kohns by failing to assist them in obtaining appropriate insurance. Id., 377–78. The Glover Agency filed a motion to strike the Kohns' claim on the ground that its agency relationship with the Kohns ended once the policy was procured. Id., 378. The court denied the motion, concluding that the Kohns had sufficiently alleged a fiduciary relationship with the Glover Agency on the basis of their allegations that they relied on the agency's expertise to obtain appropriate insurance. Id., 378–79. Unlike in the present case, in which the plaintiffs alleged a duty to provide notice of the nonrenewal of their policy, the plaintiffs in *Kohn* alleged that the agent had a duty to review their coverage and its adequacy and to explain what coverage was available. Id., 377–78. The court in *Kohn* recognized that, "once the coverage is procured, the agency relationship with the insured is ended, and the insurance broker has no authority to do anything further unless so authorized by the insured," but concluded that "Connecticut law does recognize an agency relationship between insurance agent and insured *at the time insurance is contracted* and some duties flow from that relationship. At the very least the agent has a duty to put into effect the type and amount of coverage requested. It also does not seem too much to ask that an agent, with his or her expertise and knowledge of the insurance business, review existing and available coverages, *at that time*." (Emphasis added.) Id., 378. In the present case, the plaintiffs contend that the Trahan defendants had an ongoing duty to the plaintiffs *after* the procurement of the policy, but, as previously explained, the plaintiffs have failed to present evidence to substantiate that claim.

acting "as captive insurance agents selling National General insurance policies," and, therefore, they did have a duty to provide notice of nonrenewal pursuant to § 38a-323.

We need not decide whether the Trahan defendants were acting as agents of the insurance companies for purposes of § 38a-323. As counsel for the plaintiffs conceded at oral argument before this court, this claim would be rendered a "nonissue" if we were to conclude that the notice afforded the plaintiffs by the insurance companies satisfied the requirements of § 38a-323 because, under that statutory provision, notice may be provided by either the "insurer *or* its agent . . . ." (Emphasis added.) General Statutes § 38a-323 (a) (1). Having determined in part I A of this opinion that the insurance companies complied with the statutory notice requirement, the plaintiffs' claim of inadequate notice must fail. Accordingly, the court properly rendered summary judgment in favor of the Trahan defendants on this issue.

## C

Finally, the plaintiffs maintain that the trial court improperly rendered summary judgment in favor of the Trahan defendants on the plaintiffs' claim in the second action alleging a violation of CUIPA and CUTPA. Specifically, the plaintiffs contend that the court erred in granting the Trahan defendants' motion with respect to their contention that the Trahan defendants engaged in deceptive or misleading acts or practices by failing to inform them that their policy was issued by Century-National rather than by Allstate.[25] The Trahan defendants respond that the court properly granted their

---

[25] In the trial court, the plaintiffs enumerated several other practices that, they claimed, violated CUIPA and CUTPA, including the Trahan defendants' failure to notify them of the inspection results and the impending nonrenewal. On appeal, however, the plaintiffs' CUIPA/CUTPA claim concerning the Trahan defendants is limited to the Trahan defendants' alleged practice of not fully informing their customers, including the plaintiffs, that they were not being insured with Allstate.

motion for summary judgment on this claim because the plaintiffs "failed to allege, never mind introduce, any evidence that being insured through [Century-National] and not Allstate in any way caused them damages."[26] We agree with the Trahan defendants.

The following legal principles guide our analysis of the plaintiffs' claim. "CUTPA is, on its face, a remedial statute that broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . To give effect to its provisions, [General Statutes] § 42-110g (a) of [CUTPA] establishes a private cause of action, available to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by [General Statutes §] 42-110b . . . . CUIPA, which specifically prohibits unfair business practices in the insurance industry and defines what constitutes such practices in that industry; see General Statutes § 38a-816; does not authorize a private right of action but, instead, empowers the [insurance] commissioner to enforce its provisions through administrative action. See General Statutes §§ 38a-817 and 38a-818. . . . [T]his court [however, has] determined that individuals may bring an action under CUTPA for violations of CUIPA." (Internal quotation marks omitted.) *Dorfman* v. *Smith*, 342 Conn. 582, 614, 271 A.3d 53 (2022).

"In order to sustain a CUIPA cause of action under CUTPA, a plaintiff must allege conduct that is proscribed by CUIPA." (Internal quotation marks omitted.) Id. Of particular relevance to the present case, CUIPA

---

[26] The Trahan defendants also argue, alternatively, that they had no duty to inform the plaintiffs about the expanded insurance program because it was "unquestionably no secret" that the plaintiffs' policy was underwritten by Century-National and the policy makes no reference to Allstate. Because we agree with the Trahan defendants' lack of causation argument, we need not address the Trahan defendants' alternative argument.

prohibits deceptive or misleading advertising of insurance policies, such as "[m]aking, issuing or circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement, sales presentation, omission or comparison which . . . uses any name or title of any insurance policy or class of insurance policies misrepresenting the true nature thereof . . . ." General Statutes § 38a-816 (1) and (2).

The plaintiffs alleged in the second action that the Trahan defendants violated CUIPA and CUTPA by "using deceitful and misleading practices [in] not fully informing their customers that they were not being insured with Allstate homeowners insurance." Specifically, the plaintiffs alleged that, from 2003 until 2020, apart from a brief time during which the plaintiffs were customers of a different insurance agency and insurance company, the plaintiffs were insured by Allstate, with their policies secured through the Trahan defendants and its predecessor agency. They further alleged that, during this time, the Trahan defendants were "captive" agents of Allstate, that is, they were prohibited from selling insurance products of other companies, and they held themselves out to the public, and to the plaintiffs, as Allstate representatives. Sometime before 2018, however, Allstate withdrew from selling homeowners insurance in Connecticut and negotiated an addendum to its exclusive agency agreement, which allowed captive agents to participate in an "expanded insurance program." Under this program, captive agents were authorized to place homeowners insurance policies with certain other insurance companies that were selected by Allstate.

The plaintiffs alleged that the Trahan defendants participated in the expanded insurance program without informing the general public, thereby allowing the Trahan defendants to continue to market their homeowners insurance as an Allstate product through their website, advertising, and communications with their

insureds. The plaintiffs also alleged that, "[f]rom some-time before 2018 through 2021, the [Trahan] defendants have repeatedly and consciously placed hundreds of their new insurance customers, including the plaintiffs, with homeowners insurance through the expanded insurance program using deceitful and misleading practices by not fully informing their customers that they were not being insured with Allstate homeowners insurance." Finally, the plaintiffs alleged that, "[b]y placing the plaintiffs' homeowners insurance with another insurance company under false pretenses, the plaintiffs have sustained and continue to sustain losses and damages, including the loss of their residence, the loss of their personal belongings, the loss of use of their residence, hotel expenses, interest and attorney's fees."

The court briefly addressed the plaintiffs' CUIPA/CUTPA claim at the hearing on the motions for summary judgment. The following colloquy took place between the court and the plaintiffs' counsel:

"The Court: How is there causation between the alleged misleading of the [plaintiffs] with respect to this being an Allstate policy?

"[The Plaintiffs' Counsel]: In other words, if they were never with—if they [were] informed that they were not going to be with Allstate, the [plaintiffs] would not have gone forward with [Century-National], the inspection wouldn't have occurred, they would have been . . . .

"The Court: And where—is that in the deposition or affidavits?

"[The Plaintiffs' Counsel]: I believe—no, I don't believe it is in the deposition.

"The Court: Okay. So . . . [p]resume that I'm going to find against you on that causation argument."

The court did not specifically address the plaintiffs' CUIPA/CUTPA claim in its May 4, 2022 order granting the Trahan defendants' motion for summary judgment in the second action. As explained previously, the court's order relied on Judge Schuman's analysis in his decision on the motion to strike, which addressed only the issue of whether the Trahan defendants had a duty to provide notice of nonrenewal. The plaintiffs, however, did not seek an articulation of the court's order on the motion for summary judgment, or otherwise move for reargument or reconsideration. As indicated previously, however, the court effectively rejected the plaintiffs' claim at the hearing on the motions for summary judgment.

We conclude that the plaintiffs cannot prevail on their claim on appeal because they failed to raise a genuine issue of material fact with respect to causation of harm. A plaintiff asserting a violation of CUTPA "must prove that the ascertainable loss was caused by, or a result of, the prohibited act. General Statutes § 42-110g (a) . . . . When plaintiffs seek money damages, the [a result of] language . . . in § 42-110g (a) requires a showing that the prohibited act was the proximate cause of a harm to the plaintiff. . . . [P]roximate cause is [a]n actual cause that is a substantial factor in the resulting harm . . . . The question to be asked in ascertaining whether proximate cause exists is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's act." (Internal quotation marks omitted.) *Herron* v. *Daniels*, 208 Conn. App. 75, 100–101, 264 A.3d 184 (2021).

Although the plaintiffs' evidence establishes an ascertainable loss, namely, the damages arising from the loss of their home after their policy was not renewed, they have failed to provide any evidence or explanation as to how being placed with Century-National rather than

Allstate was a substantial factor in that loss. See id. In the absence of any such substantiation, we must conclude that the trial court properly granted the Trahan defendants' motion for summary judgment with respect to the plaintiffs' claim in the second action.

The judgments are affirmed.

In this opinion the other judges concurred.